PARKER (CREASE v.). See Cases Nos. 3,376 and 3,377.

---

## Case No. 10,732.

### PARKER v. CULVERTSON.

[1 Wall. Jr. 149.] [1]

Circuit Court, E. D. Pennsylvania. Oct. 20, 1846.

GUARANTY—PURSUIT OF PRINCIPAL DEBTOR.

The word "guaranty" is somewhat technical and limited in its signification in Pennsylvania; and where it is employed, the creditor must enforce his remedies against the principal debtor before he resorts to the guarantor; or else he must show that the affairs of such principal debtor were in such a condition that any pursuit of him would have proved fruitless. This at least, unless the agreement of guaranty is in some way qualified so as to control the obligation which, when the word "guaranty" is used, it commonly imposes.

[Cited in brief in Koch v. Melhorn, 25 Pa. St. 90.]

[1] [Reported by John William Wallace, Esq.]

On the 25th of May, 1839, Chambers executed to Parker his bond and mortgage for $10,000, payable one year after date; and as a collateral security, assigned to him a bond and mortgage of one Wharton, dated the 30th March, 1839, "to secure the payment of $6,000 on the 30th March, 1841." On the 20th March, 1840, more than a year before this last bond became payable, Chambers applied to Parker to receive Wharton's bond and mortgage of $6,000 as an absolute payment, pro tanto, and to release from the lien of this last—the mortgage of $10,000—all the property embraced by it, certain inconsiderable items excepted. Parker agreed to do this, on condition of one Culvertson's becoming security for the payment of Wharton's debt of $6,000, and the balance, $4,000, which would yet remain due by Chambers. And accordingly by a deed poll, reciting all the above facts and executed contemporaneously with a release of lien by Parker, and his acceptance of the collateral security of $6,000 as payment, Culvertson became security, in effect as follows:

"I do hereby covenant and agree and hereby guarantee to the said Parker, the payment of the said debt or sum of six thousand dollars so as aforesaid secured to be paid by the said Wharton to the said Chambers and assigned to the said Parker as aforesaid: and do hereby also covenant and agree to guarantee the payment of the balance of the said debt of $10,000, to wit, the sum of four thousand dollars, which, upon the acceptance of said bond of said Wharton as payment, will still be due by the said Chambers to the said Parker, and for the further security to which the said Parker will also hold his mortgage before mentioned, upon two lots, &c.; all the other lots having been released by the said Parker from his said mortgage. And I do hereby covenant and agree to and with the said Parker, his heirs and assigns, that the security of his debt of ten thousand dollars and its interest so due and owing to him by the said Chambers shall, in no wise, be affected or rendered less secure in its ultimate payment to the said Parker, by reason of anything contained in the release of the said Parker bearing even date herewith, but the said debt shall be well and truly paid."

The above mentioned parties were all residents of Pennsylvania, where the mortgaged property was situate and where all the contracts connected with the matter were made. Before the bringing of this suit Parker alone became a citizen of New Jersey.

Wharton's bond not having been paid, and the mortgaged premises having produced on sale, but $1,380, Parker brought this action of covenant to April, 1845, against Culvertson, to recover from him the deficiency on his aforementioned deed poll.

The first count of the declaration, which contained two counts, recited the mortgage of Chambers for $10,000, and the assignment of the mortgage of $6,000, as collateral; that plaintiff agreed, at the instance of Chambers, to take Wharton's mortgage as payment instead of security, and to release certain property in Chambers' mortgage: in consideration of which the defendant agreed to guarantee the payment of said debt or sum of $6,000 by the said Wharton; and averred that the said Chambers and the said Wharton, had not, and that neither of them had paid any part of the $6,000, of which defendant had notice. Breach, in nonpayment.

The second contained the same recitals as the first; and averred that after the date thereof, that is to say, on the 1st of January, 1844, the plaintiff caused process to be issued on the mortgage, and obtained judgment, &c., by virtue whereof the premises were sold, and produced only $1,380, &c., whereof defendant had notice. Breach, in not paying, &c.

The validity in substance of this declaration now came before the court, on the plaintiff's demurrer to certain of the defendant's pleas, and on the defendant's demurrer to one of the plaintiff's replications. The alleged defect in the declaration was, that it omitted to aver either that Wharton had been pursued to insolvency by plaintiff or that his circumstances were so desperate that any pursuit of him would have been attended with no benefit. And this point it was which formed the matter of the argument.

T. I. Wharton, for plaintiff: Mr. Wharton was bound to make payment of his bond "well and truly," at the day; and Culvertson guarantees that payment. Payment, unqualified, means payment according to the tenor of the bond, i. e. "at the day," not at some future, uncertain, unknown day, after all the remedies of compulsive justice have been exhausted and found vain. Our guaranty is not, as in one case (Adcock v. Fleming, 2 Dev. & B. 470) to pay if A. should "fail to collect"; nor, as in another (Moakley v. Riggs, 19 Johns. 69), that the note is "good and collectible after the due course of law"; nor, as in a third (True v. Harding, 3 Fairf. [12 Me.] 193) to secure I.'s note out of certain property; nor as in two other cases (Cumpston v. McNair, 1 Wend. 457; White v. Case, 13 Wend. 543), for the collection of the note; nor yet, as in a sixth case (Curtis v. Smallman, 14 Wend. 231; Girard v. Heyl, 6 Bin. 253, and note), a warranty that a note is "good." "Goodness" or "secureness" or susceptiveness of collection is not payment. One is satisfied by nothing but gold or silver money of the United States; each of the others is answered if, through any, the most difficult of the whole circle of legal resorts, you can procure payment.

On principle, the position assumed by the defendant is untenable. A guarantor undertakes to see that the stipulation made by another is performed by that other, or else to perform it himself. It is not conditional, like the engagement of an indorser, but abso-

lute. The guarantor signs in order to bind himself: an indorser to pass his interest. A surety undertakes to pass in the first instance the debt of another; a guarantor undertakes that he will see it paid, or pay it himself. His obligation may be secondary as to the person to pay: as to the fact of payment there is nothing secondary about it. "How," says Judge Cowen, for the supreme court of New York in a case less strong than ours (Luqueer v. Prosser, 1 Hill, 256), "how is this distinguishable from a direct signature as surety. A man writes: 'I promise that $100 shall be paid to A. or bearer.' Who would doubt that such a promise would be a good note? The use of the word 'guarantee,' or 'warrant' or 'stipulate' or 'covenant,' or other word importing an obligation, does not vary the effect. . . . In one case (Morice v. Lee, 8 Mod. 362–364), Fortescue said: 'I promise that J. J. or order shall receive £100,' is a good note. Suppose it to stand, 'shall receive of J. J.' or 'I will see that £100 is paid by J. J.' All this and the like is no more than saying 'I will pay so much by the hand of another.'"

On authority likewise, the case is with the plaintiff, for not being a question as to the construction of the statute, nor about real estate, nor about anything having a permanent locality immovable and intra-territorial in its nature, but concerning a mercantile instrument common in its use over the Union, and now in contest between citizens of different states, it is to be settled not by the local laws of Pennsylvania, but by authorities binding on this court, if there be any, or if there be none, then by the weight of reason and decision, as it stands upon a review of judicial opinion in general, Swift v. Tyson, 16 Pet. [41 U. S.] 1.

The tendency of cases of late has been to confine rather than to extend the operation of state jurisprudence, Vick v. Lane, 3 How. [44 U. S.] 464.

If these positions be correct, then it is important that the construction of the plaintiff is denied to be law, in

I. Vermont (Smith v. Ide, 3 Vt. 290), where "I will warrant him to pay according to his agreement," is held absolute; such, says the court, being the character which has been given to other like engagements by numerous adjudications.

II. Connecticut (Breed v. Hillhouse, 7 Conn. 523), where "I guarantee the payment of this note within four years," is held absolute. "The defendant's guaranty," says the chief justice, "was absolute that the note should be paid within four years by the maker, or that he would pay it himself." Page 528.

III. New York (Allen v. Rightmere, 20 Johns. 365, 366; Luqueer v. Prosser, 1 Hill, 256), where the same construction is given to similar words, and the correctness of it enforced on principles and by authority. These cases in New York, with that in Connecticut, were cases of negotiable paper, in regard to which it has been declared (Woolley v. Sergeant, 3 Halst. [8 N. J. Law] 262), that the engagement is less easy to be made absolute than in a case like ours, of an instrument not negotiable.

IV. New Jersey (Woolley v. Sergeant, 3 Halst. [8 N. J. Law] 262), where "I guaranty the within" (not "payment of the within," and therefore less strong than our case) was held an absolute engagement; the instrument guaranteed not being negotiable paper.

V. Massachusetts (Upham v. Prince, 12 Mass. 14), where "I guaranty the payment of this note within six months," was held to be an engagement that the note should be paid in six months, and the guarantor held liable as a common indorser.

In all foregoing cases, except perhaps the last, the obligation was so absolute as not to require even demand of the principal and notice of non-payment to the surety. Admitting these, however, to be necessary, an obligation either to exhaust all remedies against the principal, or to prove that he was in such a desperate state that no remedies would assist you, quite outstrips all that counsel in the foregoing cases thought of contending for. Such an obligation, it is believed, is nowhere imposed except in Pennsylvania, and now in Missouri. It has been assumed to be unnecessary by the highest judiciary of the country, when the point was not raised,[8] and decided to be so by the only inferior ones in which my researches enable me to say that it was. Bank of New York v. Livingston, 2 Johns. Cas. 409; Morris v. Wadsworth, 11 Wend. 100.

We admit that there are cases where, unlike those above stated, guaranty even of payment has not been held absolute; that is to say, not so absolute as to dispense with demand and notice; but they are all either cases of

1. Negotiable paper (Greene v. Dodge, 2 Ham. [2 Ohio] 431; Oxford Bank v. Haynes, 8 Pick. 423; Talbot v. Gay, 18 Pick. 534; Sage v. Wilcox, 6 Conn. 81; Lewis v. Brewster [Case No. 8,318]; Foote v. Brown [Id. 4,909]); some of the cases, so far as may be gathered from their language, going upon that distinction; or

2. General commercial guaranties or letters of credit, where it was doubtful whether the guaranty would be accepted, or if accepted, doubtful when, or for what amount the guaranty was to be resorted to. Mussey v. Rayner, 22 Pick. 228; Douglass v. Reynolds, 7 Pet. [32 U. S.] 113; Rapelye v. Bailey, 3 Conn. 438; Reynolds v. Douglass, 12 Pet. [37

---

[8] Douglass v. Reynolds, 7 Pet. [32 U. S.] 114, case of a letter of credit, in which the writers bind themselves to be "responsible" for $8,000, in case the principals fail "to do so," i. e. "fail to be responsible," not fail to pay. The court, while it held that no casus fœderis arose except after demand and notice, yet add, "The creditors are not indeed bound to institute any legal proceedings against the debtor."

U. S.] 497; Adams v. Jones, Id. 207; Tuckerman v. French, 7 Greenl. 115; Cremer v. Higginson [Case No. 3,383]; Bradley v. Cary, 8 Greenl. 234; Norton v. Eastman, 4 Greenl. 521; Howe v. Nickels, 22 Me. 175; Craft v. Isham, 13 Conn. 28.

Neither class of cases concerns us; for neither intimates that anything more than demand and notice is necessary, matters which we have averred in a form not objected to. The cases which decide that demand and notice are unnecessary, decide everything in our favor, while these last, which hold them necessary, decide nothing against us.

The Pennsylvania decisions on which reliance is placed by the other side, originate in an early considered and unsupported dictum (A. D. 1793, Eddowes v. Niell, 4 Dall. [4 U. S.] 133). Rudy v. Wolf, 16 Serg. & R. 79, was the first decision, but there, for aught which appears, the bond was overdue when guarantied. Johnston v. Chapman, 3 Pen. & W. 18, must be admitted to be in point, but it goes much on the prior case; and there is visible in subsequent cases in later volumes, the seminal principle of doctrine at variance with what was held in that case.[4]

Mr. Clarkson and Mr. McIlvane, for defendant: The lex loci contractus, governs the constitution and effect of the contract; and we are relieved from difficulty in the case before us as to what is the locus contractus, for the contract was made in Pennsylvania; the parties to it all resided there until after the laws of that state operated on their case; in Pennsylvania the subject matter of the contract was situate, and there it was, itself, to be performed. The same law which governs the constitution and effects of the contract governs likewise its discharge; and if the contract, owing to any omission of Par-

ker, has never become operative, or is discharged, in Pennsylvania, it remains inoperative or is discharged everywhere. 3 Burge, Confl. Law, pp. 874-885; Story, Confl. Law, §§ 330-335 (in which books the authorities are collected). On no other principle than the one here asserted could parties all residing in the same state, contract safely. If a contract entered into by Pennsylvanians, in Pennsylvania, about property in that state, and on a subject thoroughly settled by its courts, is to be interpreted by the law of Vermont, or of Massachusetts, or of Florida, or Louisiana, or by a balance of authority struck by this court between conflicting laws of all the states, by the law of England, or by the law as now first decided by this court, and, till decided, no law at all, it is obvious that injustice will be done in the majority of cases where the court passes upon contracts made between citizens of the same state which by accident or design afterwards get there.

The argument that the federal judiciary respects nothing but state statutes or the construction of them, by the state courts, or the law of real property as settled in the state, is misapplied. That argument applies to cases where the parties to the contract were residents of different states, or the contract was to be performed in some state other than the one where it was made, or where, in short, there was no lex loci contractus other than the circuit itself. But if any parties concerned in any matter brought here, have always been citizens of Pennsylvania; if the contract have reference to that state alone; if it was there made and was there to be executed; this court will enforce the law of Pennsylvania, no matter what may be the subject of the contract. It will enforce it because it is the lex loci contractus. We claim the benefit then, of a general maximum of law; one which all courts, in all civilized countries, apply, and apply quite independently of the rules which govern the federal courts in their decisions respecting state statutes or the laws of real property. Is, then, the effect of what Culvertson did, settled in the state of Pennsylvania, where he did it?

From an early date the word "guaranty" has had a restricted meaning in Pennsylvania; and in 1793, where B. "guaranteed" all A.'s "dealings" with C., the court said that it was by no means clear that C. could call upon B., until he had failed in his endeavor to recover from A., or until A. had become "notoriously insolvent." Eddowes v. Niell, 4 Dall. [4 U. S.] 175. The spirit of this early dictum was strong enough to animate and govern all our subsequent law on this subject. "Which bond I stand security for the payment of," is not less strong language than that used by the defendant here; yet on the assignment of a bond, it has been held to amount to no more than an engagement that if the maker became insolvent and the holder used due and ordinary diligence, then, that

---

[4] McDoal v. Yeomans, 8 Watts, 361. A. wrote on the back of a note, "I warrant the within to be collectible;" the holder sued him, without having sued the maker, but as an excuse of want of suit, offered to prove that the maker was so utterly insolvent that an action would have been fruitless. The court decided that the suit was unnecessary. "If the maker," says Gibson, C. J., "was insolvent, the contract was broken the instant it was made, and the guarantee had an immediate right of action on it. The words of a guarantor are to be taken as strongly against him as the sense will bear, tempered however by the circumstances of the occasion. To warrant that a debt is collectible, therefore, is to warrant that it is legally demandable, and that the debtor is of competent ability to answer it; not that he will pay it when demanded by execution. * * * Where indeed, an action against the principal debtor is made a condition precedent by the terms of the guaranty, it mist first be prosecuted to execution; but that it was intended to be a condition must appear from some circumstance or expression in the contract."

In Craddock v. Armor, 10 Watts, 258, Craddock signed himself to a promissory note of one P. who engaged to "deliver meat at my stall," "security for the fulfillment of the above," and was held a principal debtor.

the secondary liability should arise.[5] Johnston v. Chapman, 3 Pen. & W. 18, is yet more in point. Johnston assigned and guarantied to Chapman a bond not yet due, as follows: "I do hereby assign and guaranty the payment of the within bond to C." &c. This is stronger than our case. Yet the court says: "If an obligee, on assigning a bond, enter into a covenant with the assignee to stand surety for its payment, this is an engagement to pay the money on the insolvency of the obligor, provided the assignee used due diligence to obtain payment from the obligor. . . . . A demand of payment alone is not sufficient. It must be followed up with proof from which the jury can reasonably infer the insolvency of the obligor." Pages 19, 20. The law as settled in 1831 by this, the leading case on the subject in Pennsylvania, has not been overruled by any subsequent decision, nor in any way departed from, except as in McDoal v. Yeomans, 8 Watts, 361, to enlarge its spirit.

In construing a guaranty you will temper its terms by the circumstances of its contract. Miller v. Stewart, 9 Wheat. 680. Parker's debt was not yet due, and was secured by mortgage. The mortgage was the security of his debt, "and was the thing which was not to be affected or rendered less secure in its ultimate payment." Now by the laws of Pennsylvania (Act 1705), you cannot foreclose a mortgage until a year and a day after the debt which it was given to secure becomes due; and whether or not that "security" would be "rendered less secure in its ultimate payment," was a thing which could not possibly be ascertained until the mortgage had been foreclosed. Culvertson's contract arose, not upon the nonpayment of the bond, but upon the failure of the security.

GRIER, Circuit Justice. The decision of the point here raised depends upon the effect of the contract declared on, according to the laws of Pennsylvania, the place of the contract.

The covenants, when taken into connection with the recitals in the instruments, show that it is not an original contract of suretyship, nor, like the guaranty of a promissory note, a contract to pay on a given day if the principal does not; but one of a secondary or ancillary sort; for a new consideration, guarantying the sufficiency of certain securities held by the plaintiff, and their ultimate payment. Being thus collateral and conditional, it requires, in its essence, that the plaintiff should exhaust his remedies against the other parties before he comes upon the defendant.

The word used, it may be remarked, is "guaranty"; a word which in its enlarged sense, says Chancellor Kent (Comm. vol. 3, p. 121), "is a promise to answer for the payment of some debt, or the performance of some duty, in the case of the failure of another party who in the first instance is liable."

The duties and liabilities consequent upon such a contract, are settled in Pennsylvania, as will be seen by reference to the cases cited on the argument, particularly by that of Johnston v. Chapman, 3 Pen. & W. 18, where the words of the contract much resemble those in the engagement before us. No case, so far as I am aware, has ever overruled this decision.

It follows then that the plaintiff must aver in his declaration, and of course must prove on the trial, that he had used due diligence to enforce payment of both the bond and mortgage assigned to him by Wharton; or that Wharton was in such a situation—call it what you will—that further pursuit would have been fruitless. For want of this the declaration is fatally defective and judgment must go against the plaintiff, who committed the first error, and, in this case, shows no cause of action.

NOTE. No judgment was entered, however, as the plaintiff's counsel immediately asked leave to amend his declaration, which he was allowed to do on payment of costs.