NORTHERN INSURANCE COMPANY OF NEW YORK, Appellant,
*v.* JOHN C. WRIGHT, Respondent.

Due diligence in exhausting the legal remedies against the principal
debtor is a condition precedent to any liability against a guarantor of
collection.

Defendant assigned to plaintiff a bond and mortgage, guaranteeing that
the premises covered by the mortgage were sufficient for the payment of
the amount secured, and also guaranteeing the collection of the mortgage.
By the terms of the mortgage the whole amount became due, at the
option of the holder, if default was made in the payment of any part of
the principal and interest, and the same remained unpaid for thirty
days. The principal was payable in annual installments, with interest
on the whole amount, the first installment falling due January 1, 1872.
This was not paid. Small payments, about sufficient to pay interest,
were paid from time to time, and an action to foreclose the mortgage
was commenced October 13, 1875, plaintiff electing in the complaint to
claim the whole amount due, and the foreclosure and sale was for the
whole amount unpaid. In an action upon the guaranty, to recover a
deficiency, *held*, that the delay in collection constituted *laches*, releasing
the guarantor as to the installments falling due prior to the commence-
ment of the foreclosure suit; but that *laches* could not be imputed, and
he was not discharged from liability for installments subsequently accru-
ing; and that the amount realized on the sale should be deducted from
the subsequent installments in determining the amount of defendant's
liability.

Defendant was one of plaintiff's directors and a member of its finance
committee at the time he executed the assignment, and so continued
until February 4, 1874; he, however, never attended a meeting
after January, 1873. In that month plaintiff's secretary, who was
also a director, called upon defendant to pay the amount due.
Defendant thereupon requested the secretary to foreclose, stating it
would then be time to call upon him to pay; this was not communicated
to the other officers of the company. Three months thereafter defendant
took a deed of the premises subject to the mortgage, for the purpose of
aiding the mortgagor to sell, and in 1874 he had several conversations
with plaintiff's president about selling, advised a sale, and the
president arranged with him to negotiate a sale; he did not inform the
president that he had taken a deed; there was no finding of fraud
or deceit; and it did not appear that defendant interfered in any manner
while a director to prevent a foreclosure. *Held*, that the evidence did
not justify a finding that defendant waived a strict compliance with the
condition precedent, to prosecute; and that he was not estopped from
alleging want of due diligence. Also, that notice to the secretary to
foreclose was sufficient notice to plaintiff.

The evidence tended to show that if the mortgage had been foreclosed in January, 1873, the premises would have sold for sufficient to pay it. Subsequently and before foreclosure a building thereon was destroyed by fire, depreciating its value. As to whether a failure to foreclose within a reasonable time and the subsequent loss discharged defendant from all liability, *quære.*

(Submitted February 18, 1879 ; decided March 18, 1879 )

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, reversing a judgment in favor of plaintiff, entered upon the report of a referee, granting a new trial. (Reported below, 13 Hun, 166.)

This action was brought upon a guaranty executed by defendant upon the assignment by him of a bond and mortgage, to recover deficiency arising on foreclosure and sale of the mortgaged premises.

The facts appear sufficiently in the opinion.

*J. Mullen, Jr.,* for appellant. Defendant was bound personally by his guaranty. (*Ferrin* v. *Merrick,* 41 N. Y., 315; *Marvin* v. *Stone,* 2 Cow., 781; *Pinny* v. *Johnson,* 8 Wend., 500; 2 Williams on Exec's, 1610, 1611, 1613; Story on Contracts, § 70; *Hall* v. *Rand,* 8 Cow., 560; *Curt* v. *Burlingame,* 62 Barb., 351.) Defendant's acts and dealings with plaintiff amount to an estoppel *in pais.* (*Dugall* v. *Odell,* 3 Hill, 215; *Young* v. *Bushnell,* 8 Bow., 1; 2 Hill, 215; 18 N. Y., 392; 4 Barb., 495; 1 Ed. Smith, 756; 7 Barb., 407.) The judgment in the foreclosure suit, which found the whole amount of the mortgage to be due, estops defendant from insisting now that the whole amount of the bond was not due. (Herman on Estoppel, §§ 72–75, 89, 90, 162, 177; *Kingsland* v. *Spaulding,* 3 Barb. Ch., 341; *Brum* v. *Howe,* 2 id., 341; *Embury* v. *Conner,* 3 Comst., 511; *Ehl* v. *Bingham,* 7 Barb., 494; *Doty* v. *Brown,* 4 Comst., 71; *Davis* v. *Tolcott,* 14 Barb., 611; *Eggleston* v. *Knickerbocker,* 6 id., 428; *Green* v. *Black,* 5 Den., 497; *Thomas* v. *Hobble,* 1 Smith, 405.)

*McCartin & Williams*, for respondent. The guaranty was void as to defendant, because it was to answer for the debt of another, and no consideration was expressed or proved. (*Castle* v. *Erickson*, 10 Hun, 343.) If a surety requests the holder of the instrument to proceed against the principal, and he fails to do so and loss is made, the surety is discharged. (17 J. R., 384; 25 N. Y., 552; 4 J. Ch., 123; 49 Barb., 182; 21 id., 249.) The guaranty being for the collection of the bond and mortgage, no notice from defendant to plaintiff requiring it to collect of the maker was necessary; plaintiff was bound to exercise due diligence. (*Burt* v. *Harner*, 51 Barb., 501; *Moakley* v. *Riggs*, 19 J. R., 69; *Kies* v. *Tefft*, 1 Cow., 98; *Gallagher* v. *White*, 31 Barb., 92; *Loveland* v. *Shephard*, 2 Hill, 139; *Mains* v. *Haight*, 4 Barb., 76; *Craig* v. *Parkes*, 40 N. Y., 181; *Penman* v. *Hudson*, 6 Barb., 76; *Ninell* v. *Fowler*, 23 id., 628; *Hart* v. *Heedson*, 6 Duer, 294.) Defendant's acts did not constitute an estoppel as against him, or show that he waived his right to insist that the bond and mortgage should not be enforced as it became due. (*Belmont* v. *Coman*, 22 N. Y., 438; *Remsen* v. *Beekman*, 25 id., 552–560; *Van Derveer* v. *Wright*, 6 Barb., 547; *Payne* v. *Burnham*, 62 N. Y., 69; *Malloney* v. *Horan*, 49 id., 111; *Lawrence* v. *Brown*, 5 id., 394–395.)

CHURCH, Ch. J. The guaranty was only of collection, and not of payment. It guaranteed that the property was sufficient for the payment of the amount secured by the mortgage, which was followed by the words, " and I hereby guarantee the collection of the said mortgage." The first part of the instrument contemplated a resort to the property in the first instance, and the closing words indicate clearly the nature of the obligation which was intended to be incurred. The law is well settled in this State that such a guaranty is an undertaking to pay the sum secured by the obligation, guaranteed, provided the principal is prosecuted to judgment and execution with due diligence, and the same

cannot be collected of him. Due diligence in exhausting the legal remedies against the principal, is a condition precedent to any liability against the guarantor. Nor will proof of insolvency or inability to pay on the part of the principal, avail as a substitute for a failure to pursue the legal remedies. (*Craig* v. *Parkes*, 40 N. Y., 181.) It follows that this condition is a part of the contract, and must be shown to have been performed, as a demand and protest of a note must be shown in order to fix the liability of an indorser. The mortgage was $4,400, payable in installments of $500 each, commencing on the 1st day of January, 1872, together with annual interest, and the whole amount became due if any default was made in the payment of any part of the principal and interest, and the same remained unpaid for thirty days, at the option of the holder. Small payments were made from time to time amounting to about sufficient to pay the interest, and on the 13th day of October, 1875, an action was commenced to foreclose the mortgage.

The plaintiff elected in the complaint to claim that the whole amount was due and payable, and the foreclosure and sale was for the whole amount unpaid on the bond and mortgage. It thus appears that no action was commenced to enforce the mortgage until more than nine months had elapsed from the time the last previous payment became due on the 1st January, 1875, and three years and nine months from the time the first payment of principal became due, in 1872. The shortest time was clearly a delay constituting *laches*, and would release the guarantor. (*Craig* v. *Parkes*, *supra*, and cases cited.) Due diligence requires vigilance on the part of the creditor, and any unnecessary delay will discharge the guarantor.

These facts were all that appeared when the plaintiff rested, and the motion for a nonsuit was made, and the defendant would clearly have been entitled to a nonsuit, if the whole amount of the mortgage had been due a sufficient length of time before the action was commenced to have constituted *laches* for a delay in prosecuting it. As to the installments

falling due after the commencement of the action, I am unable to see how *laches* could be imputed to the plaintiff. It had the option to insist that the whole amount was due and payable, but it was not obliged to do so. It might have foreclosed for the past due payments, and sold subject to installments to fall due, and if it had taken that course and diligently prosecuted to recover such subsequent installments, there could have been no negligence attributed to it. Negligence could not be predicated upon the exercise of a legal right to determine when the payments became due. When it commenced the foreclosure it did exercise the option by claiming that the whole amount was due, but no negligence could be imputed after that, in respect to future payments. Neither upon the trial, nor upon appeal to the Supreme Court, or this court, does this point seem to have been taken by either party. So far as this question is concerned, it seems to have been assumed by both parties that the defendant was liable for the whole deficiency, or none. Other questions are to be considered which may not render it important upon this appeal.

The referee found as a conclusion of law that the defendant by his acts and declarations with the officers of the plaintiff waived a strict compliance with the condition precedent to prosecute, and was *estopped* from alleging a want of due diligence. The General Term reversed the judgment upon the ground that the evidence was not sufficient to justify this finding. The facts upon which this finding was predicated are found by the referee. One was that the defendant was a director, and a member of the executive committee at the time he made the assignment of the mortgage, and continued as such director until February 4, 1874. But he also finds that the defendant resided sixteen miles from the office, and never attended a meeting after January, 1873, and that in January, 1873, the secretary called upon him to pay the amount due, by letter, that he immediately came to the office, inquired why he was called on, to which the secretary replied, because he was interested and that "defendant

answered that he could not assist Mr. Langdon, and should not pay the mortgage himself, that there was property enough to pay the claim, and wanted the secretary to go to work and foreclose the mortgage, and after he had sold the property if there was any deficiency it would be time enough to look to him, defendant, for pay." It was found that this was not communicated to the other officers of the company, but the secretary was also director, and if he was authorized to call upon the defendant for payment, had had sufficient authority to receive the answer. There is no finding, and no evidence that the defendant interfered in any manner while a director, to prevent a foreclosure, and the first and only time a claim was made against him, he requested a foreclosure, and expressly refused to pay without it. Besides it is difficult to see how his being a director influenced a delay to prosecute, when the prosecution did not take place until nearly two years after he ceased to be a director. The other facts are that three months after he requested a foreclosure he took a deed of the premises subject to the mortgage for the purpose of aiding the mortgagor to sell the premises, as the latter was about removing therefrom, and thus rendering it more convenient to convey the premises, and that in 1874, he had several conversations with the president of the plaintiff about selling the premises, and advised a sale of them, and that the president arranged with him to negotiate a sale, and that he did not inform the president that he had taken a deed of the premises until the spring of 1875. There is no finding that there was any fraud, device, or artifice, practiced by the defendant to prevent a foreclosure, or to induce the plaintiff to refrain from prosecuting.

We agree with the General Term, that, "in all this we see no evidence of any intention on the part of the defendant to waive any of his rights as a surety, but his acts seem to have been entirely consistent with a desire to have the matter so arranged, that both himself, and the insurance company, should if possible be saved from loss." Waiver is largely a question of intention, and it seems difficult to impute such

an intention to the defendant from the circumstances proved, after he had in express terms demanded a foreclosure, and disclaimed liability until a deficiency was ascertained. The evidence is conflicting as to whether he told the president that he had taken a deed. The referee has found that he did not. The deed was put upon record, and I do not see the materiality of the fact upon the question of a waiver.

The affidavit of appraisal stating that the mortgagor resided on the premises, was probably an inadvertence, and I infer was so regarded by the referee. The defendant never asked for delay in foreclosing, and there is no evidence or finding, that the company was induced to delay foreclosure by the acts or declarations of the defendant, nor that what he did was for that purpose, and the waiver if made would not apply to any delay prior to 1874.

The defendant also claims a discharge upon the principle that if the surety requests the holder to proceed and enforce his security against the principal and the latter omits to do so within a reasonable time and a loss occurs, the surety is discharged. (*Remsen* v. *Beekman*, 25 N. Y., 552.) The evidence tends to show that if the mortgage had been foreclosed in January, 1873, the premises would have sold for sufficient to have paid it. The loss by the burning of the house which occurred after that time, and depreciation in value it is claimed, have caused the deficiency. The referee finds that at that time, the premises were worth $4,400, and that the mortgage was a first lien. The plaintiff insists that notice to the secretary was not sufficient, but we think otherwise. Aside from this point, the proper disposition of the case according to the foregoing views would have been to have held : 1st. That the defendant was discharged from liability upon his guaranty, for payments which fell due on or before January 1, 1875. 2d. That he was not discharged from liability for payments subsequently accruing. 3d. From the amount of such subsequent payments should have been deducted the sum realized on the sale of the land which as between these parties was the primary fund to apply on

his liability, and a recovery for the balance adjudged against him.

But as the General Term rightfully reversed the judgment, and granted a new trial, this court could not afford relief for this balance; as upon the affirmance of the order of the General Term the statute gives judgment absolute against the plaintiff, and we have no power to prevent it.

If the defense based upon the request to the secretary is valid, which it is not necessary definitely to determine, the result would be the same.

The order of the General Term must be affirmed, and judgment absolute ordered for defendant.

All concur.

Order affirmed, and judgment accordingly.