9714.  GEORGIA CASUALTY COMPANY *v.* DIXIE TRUST
           & SECURITY COMPANY *et·al.*

1. Under the allegations in the pleadings, the city court of Macon had no jurisdiction of the Dixie Trust & Security Company in this case.
2. The contract signed by Wilson was one of guaranty, and a guarantor can not be sued jointly with the principal debtor.
3. As a general rule the consideration of a contract is open to inquiry as between the original parties, but "if the consideration be so stated in the contract as to make it one of its terms or conditions, as where the consideration consists of mutual promises expressed in the contract, a different consideration, whether variant or additional, can not be shown by parol."

DECIDED FEBRUARY 18, 1919.

Complaint; from city court of Macon—Judge Guerry.  March 22, 1918.

*P. F. Brock,* for plaintiff.

*Hardeman, Jones, Park & Johnston, Richard Curd,* for defendants.

BLOODWORTH, J.  The brief of counsel for defendants in error is such a clear and fair presentation of the issues involved in this case, and so fully in accord with our opinion of the principles of law involved, that we adopt it almost in its entirety as our opinion in the case.

The Dixie Trust & Security Company issued two certificates of deposit, dated February 26, 1915.  These certificates were signed by the trust company through two of its officers alone.  No other party appeared as joint maker, security, indorser, or otherwise thereon.  The company was chartered in Crisp county, and had its principal office and place of place of business in that county.  Subsequently, on March 1, 1915, R. L. Wilson executed a contract wherein he agreed to indorse these certificates and to guarantee the Georgia Casualty Company against loss thereon.  This contract was signed by Wilson alone. · The trust company was not a party thereto in any way, and, so far as shown on the face of the contract, was not interested therein beneficially or otherwise.  Wilson was a resident of Bibb county, Georgia.  The Georgia Casualty Company, the holder of these certificates, sued the trust company and Wilson jointly, in the city court of Macon, for their full face value with interest, attaching copies of the certificates and contract to the petition.  The trust company demurred to the petition, on the ground that it affirmatively appeared that the court was without jurisdiction

as to it.   Wilson demurred, on the grounds,: that it affirmatively appeared that he was a guarantor against loss only; that he was not a party to the certificates nor liable thereon, and could not be sued jointly with the trust company; and that he could not be sued individually on the contract of indemnity until it was shown that the holder had been unable to recover from the maker of the certificates.   On the hearing the plaintiff filed an amendment, which was allowed, alleging that the consideration for the contract executed by Wilson was extension of time and indulgence granted by the plaintiff to the trust company and another upon these certificates and other indebtedness, and that it was the intention of the parties that Wilson should become surety for said debts.   This amendment was demurred to on the ground that it was an attempt to vary the plain terms of the contract set forth, was directly contradictory thereof, and that the same could not be changed or varied by any alleged intention of the parties.   The court sustained the demurrer of the trust company and also sustained the demurrer of R. L. Wilson to the original petition and to the petition as amended, and dismissed the entire case.   The correctness of the court's rulings upon all of the demurrers depends primarily upon the terms of the contract between plaintiff and Wilson.   The material portions thereof are:   "Whereas the Georgia Casualty Company has on deposit with the Farmers State Bank the sum of $7,710.00, . . . and also holds the following certificate of deposit issued by said bank: . . Now, therefore, in consideration of $5.00, . . the said R. L. Wilson hereby agrees to endorse the above-named certificates as well as the other two certificates of deposit held by the Georgia Casualty Company and issued by the Dixie Trust and Security Company, . . and to likewise endorse any renewals or extensions of the above-named certificates of deposit.   And for the consideration aforesaid the said R. L. Wilson does also guarantee the said Georgia Casualty Company against loss on account of the above-named certificates of deposit . . or the above-mentioned deposit with the Farmers State Bank, and guarantees to the said Georgia Casualty Company the faithful payment of all amounts due or owing by said Farmers State Bank to the Georgia Casualty Company."

1. After fixing the venue of divorce cases, land cases, and equity cases, the constitution of Georgia provides:  "Suits against joint

obligors, joint promisors, copartners, or joint trespassers, residing in different counties, may be tried in either county." Civil .Code (1910), § 6541. "Suits against the maker and indorser of promissory notes, or drawer, acceptor, and indorser of inland bills of exchange, or like instruments, residing in different counties, shall be brought in the county where the maker or acceptor resides." Civil Code (1910), § 6542. "All other civil cases shall be tried in the county where the defendant resides." Civil Code (1910), § 6543. It is not contended that Wilson was a joint maker. He was not an indorser in the technical sense. If he had been, a joint suit could only be maintained in Crisp county. If a guarantor, there could be no joint suit in either county. Each party would have to be sued independently in the county of his residence. *Musgrove* v. *Luther Publishing Co.*, 5 *Ga. App.* 279 (63 S. E. 52); *Manry* v. *Waxelbaum Co.*, 108 *Ga.* 14 (33 S. E. 701; *Renfroe* v. *Shuman*, 94 *Ga.* 153 (21 S. E. 373); *Sims* v. *Clark*, 91 *Ga.* 302 (18 S. E. 158). Was he a surety? There is no connection whatever on the certificates of deposit themselves, either on their face or elsewhere, between the trust company and Wilson. They are promises to pay by the trust company alone, independently of any one else, and the company is not a party to any other agreement, by any other persons, relating to them. The difference between the contract of surety and guarantor is thus stated: " 'A surety and guarantor have this in common, that they are both bound for another person; yet there are points of difference between them which should be carefully noted. A surety is usually bound with his principal by the same instrument, executed at the same time and on the same consideration. He is an original promisor and debtor from the beginning, and is held ordinarily to every known default of his principal. . . On the other hand, the contract of guarantor is his own separate undertaking, in which the principal does not join. It is usually entered into before or after that of the principal and is often founded on a separate consideration from that supporting the contract of the principal. The original contract of the principal is not the guarantor's contract, and the guarantor is not bound to take notice of its non-performance.' 1 Brandt on Suretyship (3d ed.) § 2. The surety joins in the same promise as his principal and is primarily liable; the guarantor makes a separate and individual promise, and is only secondarily liable. His liability is contin-

gent on the default of his principal, and he only becomes absolutely liable when such default takes place and he is notified thereof. 20 Cyc. 1400 et seq.; Childs on Suretyship and Guaranty 7." *Musgrove* v. *Luther Publishing Co.*, supra. The distinction is thus stated in a decision of our Supreme Court: "One difference is pointed out by our code. It says that a contract of suretyship 'differs from a guaranty in this, that the consideration of the latter is a benefit flowing to the guarantor.' Civil Code [1895], § 2966 [1910, § 3538]. . . In brief, we understand the difference to be this: A surety binds himself to perform if the principal does not, without regard to his ability to do so. His contract is equally absolute with that of his principal. They may be sued in the same action, and judgment may be entered up against both. A guarantor, on the other hand, does not contract that the principal will pay, but simply that he is able to do so; in other words, a guarantor warrants nothing but the solvency of the principal. Before an action can be maintained against a guarantor, therefore, it must be shown that the principal is unable to perform. The surety says to the creditor, if your debtor will not pay, I will pay. The guarantor says to him, proceed first against the principal, and if he should not be able to pay, then you may proceed against me. It has been said that there is no instance in the books of a guarantor contracting jointly with his principal. Much has been written upon this subject, but we think the above expresses the true distinction between the two classes of contracts." *Manry* v. *Waxelbaum Co.*, supra. Measured by the rules laid down in the decisions cited, whatever may be the particular nature of the obligation entered into by Wilson, it was not that of a surety. The obligations were evidenced by different instruments executed at different times and upon different considerations. Wilson was not a debtor from the beginning, and has at no time ever been primarily liable upon the certificates. Under no view of the transaction could the city court of Macon have had jurisdiction of the trust company.

2. By the terms of the writing signed by Wilson, the Casualty Company bound itself to nothing. Wilson agreed to three things: (*a*) To indorse all the certificates of deposit. (*b*) To guarantee the Georgia Casualty Company "against loss on account of the above-named certificates of deposit," or the deposit with the Farmers State Bank. (*c*) To guarantee to the Georgia Casualty Company

the faithful payment of all amounts due or owing by said Farmers State Bank to Georgia Casualty Company. (1) Wilson merely *agreed* to indorse; he did not indorse and is not sued as indorser. He could not be held as indorser upon a mere promise to indorse. He might be sued for breach of his agreement, but then the plaintiff could only recover by showing loss. *National Bank* v. *Leonard*, 91 *Ga.* 805 (18 S. E. 32) ; Birdsell v. Brown, 96 Mich. 213 (55 N. W. 806) ; 1 Dan. Neg. Inst. (6th ed.) § 689. If one agrees to give a note, can a suit be brought against him on the note which he fails to give? See *Adams* v. *Williams,* 125 *Ga.* 430 (54 S. E. 99). (a) An indorsement may always be explained. Civil Code (1910), § 5796. If Wilson had indorsed the certificates, what kind of indorsement would he have placed thereon? The contract answers the question. He was to indorse on the Farmers State Bank certificates a guaranty to faithfully pay. He was to indorse on the Dixie Trust Company certificates a guarantee against loss. Otherwise, why did not the contract stop with a simple agreement to indorse? (b) Under the authorities quoted from in the first division of this opinion Wilson was a guarantor. Under the terms of the specific contract in question here, his guaranty was against any loss on the Dixie Trust Company certificate. This was an agreement to indemnify only. "A guaranty of a note is a covenant to pay it, breached by failure of the note's maker to do so; while an indemnitor's covenant is only to make good any loss from non-payment." Eckhart v. Heier, 37 S. D. 382 (158 N. W. 403). "So, in general, there is a well-settled distinction between an agreement to indemnify and an agreement to pay, or a covenant to do a certain act. In the latter case a recovery may be had as soon as there is a breach of the contract, whereas in the case of a covenant of indemnity strictly, — that is of an indemnity against loss,—no right of action accrues until the indemnitee has suffered a loss against which the covenant runs." 14 Ruling Case Law, 44. See also Wicker v. Hoppock, 6 Wall. 94, 99 (18 L. ed. 752, 753) ; Wilson v. Stillwell, 9 Ohio St. 467 (75 Am. D. 477) ; Henderson v. Shillito, 64 Ohio St. 236 (60 N. E. 295, 298, 82 Am. St. R. 745) ; Bain v. Arthur, 129 La. 143 (55 So. 743) ; Poe v. Philadelphia Gas Co., 118 Md. 347 (84 Atl. 476). "A guaranty of collection or a guaranty against loss as the result of the failure to collect a debt places upon the one for whose benefit the guaranty is made the duty of making a reasonable effort

to collect the debt from the principal debtor; and a cause of action does not accrue thereon until after such effort has been made and proved unavailing. There is no right of action upon such contingent liability immediately upon the failure of the principal to perform." Burton *v.* Dewey, 4 Kan. 592 (46 Pac. 325). See also Allen *v.* Rundle, 50 Conn. 9 (47 Am. R. 599); Allison *v.* Waldham, 24 Ill. 132; Bosman *v.* Akeley, 39 Mich. 710 (33 Am. R. 447); Osborne *v.* Thompson, 36 Minn. 528 (33 N. W. 1); Northern Ins. Co. *v.* Wright, 76 N. Y. 445; Woods *v.* Sherman, 71 Pa. St. 100 (2); Evans *v.* Bell, 45 Tex. 553; Day *v.* Elmore, 4 Wis. 190; Parker *v.* Culvertson, 18 Fed. Cas. 1122, No. 10732. Inasmuch as there has been no effort (prior to the present suit in a court without jurisdiction) to collect from the Dixie Trust Company, and that company is not even alleged to be insolvent, the liability contracted for has not arisen. The contract of guaranty is *stricti juris,* and the guarantor may stand upon the precise terms of his contract. *Williams Valve Co.* v. *Amorous,* 19 *Ga. App.* 155 (1, 5) (91 S. E. 240). (3) The language used evidences a clear intention to guarantee against loss only on the Dixie Trust & Security Company certificates. Wilson, therefore, was not subject to a suit upon his undertaking until efforts to collect out of the trust company were exhausted or some reason was shown why such efforts would prove fruitless.

3. No relation between Wilson and the trust company is mentioned in the writing. The sole consideration therefor recited in the agreement was the payment of five dollars. If this was not paid, then there was no consideration flowing from the casualty company for the contract. It neither did anything nor agreed to do anything. While the consideration of a contract may be inquired into, an executory consideration different from that expressed in the contract cannot be proved. It does not appear how any agreement to extend the time for payment of the Farmers State Bank certificates could have been of any benefit to the Dixie Trust Company or could have furnished any consideration for Wilson's agreement to indorse or guarantee the trust company's certificates. But even if so, and if the alleged extension of time on the trust company's certificates constituted a consideration for Wilson's agreement, this could not be shown by parol, to vary or add to the writing. *Smith* v. *Newton,* 59 *Ga.* 113 (5); *Atkinson* v. *Lanier,* 69 *Ga.* 460 (2); *Burke* v.

*Napier,* 106 *Ga.* 329 (32 S. E. 134); *Wellmaker* v. *Wheatley,* 123 *Ga.* 203 (2) (51 S. E. 436); *Coldwell Co.* v. *Cowart,* 138 *Ga.* 236 (75 S. E. 425); *Brosseau* v. *Jacobs' Pharmacy Co.,* 147 *Ga.* 189 (93 S. E. 293); *Kehoe* v. *Southern Paving Co.,* 7 *Ga. App.* 236 (66 S. E. 547). In no event could it have changed the contract from one of guaranty to one of suretyship, in the face of the specific provisions to the contrary in the agreement itself. The demurrers, including the demurrer to the petition as amended, should have been sustained and the case dismissed as to all parties, and the court was clearly right in so doing. See *Adams* v. *Williams, supra.*

Judgment affirmed. *Broyles, P. J.,* and *Stephens, J.,* concur.