■ INLAND CREDIT CORPORATION, Respondent, v DAVID C. GOLD, Appellant. — Judgment, Supreme Court, New York County (Shainswit, J.), entered November 21, 1980, after nonjury trial, in favor of plaintiff against defendant for $357,149.53, with costs and disbursements, dismissing defendant's counterclaim, and denying defendant's motion to amend his answer, is unanimously affirmed, with costs. We agree with the Trial Judge's reasoning in this case. In addition we have the following observations: This is an action on the personal guarantee by defendant of a second mortgage. Defendant was the sole general partner of the real estate partnership which bought the property from plaintiff's predecessor. Plaintiff's predecessor took back a purchase money second mortgage for $191,000, which was subordinate to a first mortgage held by an insurance company of approximately $1,200,000. In a conventional mortgage,

defendant, as the sole general partner of the mortgagor, would be personally liable on the second mortgage. Defendant wished to make sure that his personal responsibility was not resorted to until after the security had been exhausted. Accordingly, the parties adopted the form of a second mortgage without recourse, and a personal guarantee by the defendant of the obligation of the second mortgage, subject to the condition of prior recourse to the security. But all that this changed was to make sure that defendant should not be held liable until the security was exhausted. As it turned out, the first mortgagee foreclosed and bought the property at a figure very much below the amount owed on the first mortgage, so there was no security left to be exhausted before defendant was called upon to make good on his personal obligation on the second mortgage. To carry out the intention of the parties, the guarantee provided that "LENDER or its successors or assigns agrees as a condition of this Guaranty to proceed against all collateral relating to the Note and Mortgage which is the subject of this Guaranty and to institute a foreclosure proceeding resulting in a judgment of foreclosure." The mortgagor apparently defaulted on the second mortgage on September 1, 1976. On February 14, 1977 the first mortgagee commenced a foreclosure proceeding and the property was sold at a foreclosure sale of the first mortgage on June 27, 1977. Thereafter plaintiff commenced this action on the guarantee of the second mortgage without suing to foreclose that mortgage. Trial Term held, and we agree, that in these circumstances plaintiff was excused from suing to foreclose the second mortgage as there was nothing to foreclose. If after the first mortgagee commenced its foreclosure suit on February 14, 1977 plaintiff had also commenced a foreclosure suit on the second mortgage, plaintiff in form would have satisfied the condition of the guarantee. But this would have been a wholly futile step as the first mortgage had far more than exhausted the security. The law does not require parties to engage in futile steps to enforce their rights. The question then becomes whether failure of the second mortgagee to institute foreclosure proceedings in the five and one-half months between the default on the second mortgage and the institution of the foreclosure on the first mortgage bars plaintiff's suit. In the circumstances of this case, it clearly does not. The defense with respect to such delay is essentially a defense of laches. (*Northern Ins. Co. of N.Y. v Wright,* 76 NY 445, 448.) Laches is an affirmative defense which requires a showing of both unreasonable delay and damage arising from the delay. There is no showing that defendant was in any way damaged. (Even when the defense has been sustained, it has been sustained only as to installments that became due in the period of delay, *supra.*) But more important, there was no unreasonable delay in this case. In June of 1976 the mortgagor had apparently defaulted on the first mortgage; this constituted also a default under the second mortgage. The second mortgagee promptly took steps under the Massachusetts procedure to enforce the second mortgage by entering on the premises and collecting the rents. The mortgagor and defendant then sued plaintiff in the New York Supreme Court to enjoin these acts claiming, among other things, that the mortgagor was working out, or had worked out, its problems with the first mortgagee. Plaintiff thereupon ceased to try to enforce the second mortgage because of the default on the first mortgage. In the circumstances, it was not unreasonable for plaintiff when the direct default on the second mortgage occurred, to wait even a few months to see whether the mortgagor and defendant were able to resolve their problems with the first mortgagee. Defendant is hardly in a position to contend that the plaintiff should have more promptly foreclosed on the second mortgage. Defendant after all was the general partner of the mortgagor. As such he bore a fiduciary relationship to the other partners. It would be a breach of his fiduciary obligations for him to

insist that plaintiff should foreclose on the second mortgage, thereby foreclosing the interest of the other partners in order to save the defendant, the fiduciary, some portion of his personal obligation. Indeed during this period defendant was desperately striving to ward off foreclosure. The judgment against defendant conforms with the reasonable expectations of the parties when they entered into the transaction. This was a real estate transaction — perhaps a real estate speculation — which turned out to be unsuccessful. The question is who is to bear the loss, the seller or the buyer. Obviously the parties intended that both profit and loss should be for the account of the buyer. The sale by plaintiff's predecessor to the partnerhip was essentially a no cash, or very little cash, transaction, in which the purchaser took subject to the first mortgage and gave back a purchase money second mortgage, which defendant guaranteed, with the proviso that his personal liability should not be enforced until after resort to the mortgaged property. When the interest of the parties in the property was exhausted by the foreclosure of the first mortgage, the business situation as well as the reasonable expectations of the parties called for defendant to make good. Concur — Kupferman, J. P., Sandler, Carro, Silverman and Asch, JJ.