## SEXT *vs.* GEISE & COMPANY.

1. If whilst a house is building the supply of lumber is about to stop because the contractor is not considered safe, and the owner of the building procures its continuance by promising to pay the bill, his undertaking is not collateral but original.
2. If the time stipulated for payment be when the building is completed, the burden of proving completion or the lapse of a reasonable time for that purpose before suit brought, is on the creditor.

April 25, 1888.

Statute of frauds. Contracts. *Onus probandi.* Before Judge RICHARD H. CLARK. Dekalb superior court. August term, 1887.

In December, 1883, suit was brought by Geise & Company against J. Sext on an open account for $178.11, for lumber furnished at different dates from September 27 to October 9, 1883. The defendant pleaded "not indebted." On the trial, it was shown that lumber had been sold to one McManaman to build a house for Sext, but after about 3,000 feet of the lumber had been delivered, Geise & Co. became doubtful as to the ability or disposition of McManaman to pay; and in a conversation between Sext and the agent of Geise & Co. about such payment, in the office of the firm, Sext stated that he would pay McManaman in this office. The agent suggested that he would get an order from McManaman, which the agent thought but was not positive Sext said he would accept. Afterwards the order bearing date October 9th, 1883, was obtained, but Sext refused to accept it. It was for $200.00, the excess being to cover more lumber for finishing off, which McManaman said he would need. The entire account sued on was charged on the books of Geise & Co. to McManaman, and was at no time transferred to the account of Sext. No order was brought by McManaman when the credit was first extended to him. It does not appear whether or not the house ever was finished, or what material was

used in its construction after the conversation above stated, but it does appear inferentially that delivery was made on the premises, the bulk of it after the written order was obtained. Sext bought other lumber on his own account and paid for it. McManaman was not present at the conversation.

Two witnesses testified in the case. The main facts in the testimony of the first have already been stated. The other said that he went with Sext to the office of Geise & Co.; that Simpson (the first witness) said he was doubtful about sending any more lumber, and Sext said that he would see that it was paid for when the job was finished, or at the winding up of the job; and that at this time McManaman had abandoned the job. This was all the material evidence, except the unaccepted order on Sext.

The jury found for the plaintiffs $126.11. The defendant moved for a new trial on the following grounds:

(1), (2), (3), (4)   The verdict was strongly and decidedly against the weight of evidence, without evidence to support it, contrary to law, etc.

(5) Because, during the argument of the law of the case to the judge, he said to counsel for the plaintiff, in presence of the jury, "In my view of the case, this case does not make the question of undertaking to answer for the debt of another, but whether it is an original undertaking by Sext"; which was calculated to mislead the jury.

(6) Because the court refused to give the following charges:

(a) If the jury shall find that McManaman is still liable to Geise and can be sued by him, then McManaman is the primary debtor and Sext is a mere surety, and cannot be bound unless the contract be in writing.

(b) If the goods were sold to McManaman, and Sext did not agree to the substitution, or the debt of McManaman was not extinguished and McManaman was still liable, then Sext was a surety, and the contract must be in writing.

(c) If the jury find that Sext promised to pay for the lumber on condition that McManaman finished the job, and that McManaman did not finish, then Sext is not liable.

(d) If Sext promised to pay when the house was finished, then the burden of proof is on the plaintiffs to show that it was finished at the time of filing the suit.

(7) Because the court charged: "That Mr. Sext, the defendant, came up and said, 'If you will let the lumber go as heretofore, I will pay you for it at the winding up';" there being no evidence to warrant such charge.

(8) Because the court charged: "Therefore, gentlemen of the jury, except the amount of lumber that was furnished up to the time this contract was made between Sext and the plaintiffs, which you shall believe to have been made in the manner in which I have charged you, the defendant would then be liable for whatever was furnished afterwards." Also: "And as to each, I charge you, as I did before, that if there was an understanding by Sext to pay the plaintiff for what more that he would furnish of lumber, and that lumber went into the house, and that he would pay, or that he would see it paid, then the credit was given to him and the loss should fall upon him."—Assigned as error because it virtually told the jury that there was an original undertaking by defendant to pay, etc.; and because it excluded from the jury the defendant's theory of the evidence.

(9) Because the court charged: "I divide this case into two parts, to be divided at the point or the amount of the account at the time when the plaintiffs ceased to furnish any more lumber on McManaman's credit";—the error assigned being, that the court thus told the jury that at a certain time the plaintiffs ceased to credit McManaman, and excluded defendant's theory of the evidence.

(10) Because the court charged: "If you believe from the evidence that this first lumber that was furnished on McManaman's credit was lumber that was intended for Sext's house and went into Sext's house, and then that

after that, the plaintiffs furnished the rest of the lumber upon the promise of Sext to make it good at the winding up, he would be liable for that, too; because, if it is true that he came under this obligation to him for that, if you believe from the evidence, as I have stated to you as to Sext's obligation, that by his act he caused the plaintiffs to furnish another amount of lumber and a greater amount of lumber, and not only put him in a condition to lose the greater amount of lumber that he afterwards furnished, but also the amount that they had already furnished."—Assigned as error because obscure and misleading.

(11) Because the court charged: "Whichever one of them was the cause of it is the one upon which the loss shall fall; and if you believe from the evidence that the defendant here, Mr. Sext, was the cause of that, and as a part of that cause he undertook a legal obligation, according to the law here given you as applied to the evidence, then he would be liable for the amount of the debt. If you should believe then, gentlemen of the jury, from the evidence, that the defendant here, Sext, promised and promised unconditionally to pay at the winding up, meaning when the job was finished, that of itself was not a condition to pay should there be an amount of money in his hands owing to McManaman at the time; it would be an obligation to pay, and put upon him the duty to see that there was money enough left in his hands to pay."—Assigned as error because it virtually told the jury that the defendant caused the loss to plaintiffs, excluding the defendant's theory of the evidence.

The court approved the motion for a new trial, with the qualification that the exceptions to the charges and refusals to charge must be taken in view of the whole charge, and overruled the motion; and the defendant excepted. The entire charge of the court stated the issues between the parties fully, and especially as to whether the undertaking was original or an undertaking to answer for the debt of another.

In connection with the 7th ground of the motion the following portion of the charge immediately preceding, including and immediately following that quoted in the ground, is stated: " If you believe that Geise & Company had given McManaman credit for a certain amount of lumber, and found that he was unreliable and refused to let any more lumber go the way that went, and that Mr. Sext, the defendant, came up and said, ' If you will let the lumber go as heretofore, I will pay you for it at the wind-ing up '; and if you believe, moreover, that McManaman wanted the lumber to put into Sext's house, then Sext is bound to pay." Immediately following the portion just quoted, the court again drew the attention of the jury to the distinction between an original undertaking and one to pay the debt of another, and then gave the charge set out in the 8th ground of the motion down to the words, " whatever was finished afterwards." The court then pro-ceeded to charge as stated in the 9th ground of the motion, and immediately followed it with the portion set out in the 10th ground; and then charged: " That rests upon the principle that when one of two persons is to suffer for the conduct of another, he who caused it is the person upon whom the loss should fall "; and followed this with the portion of the charge stated in the 11th ground. After this the court gave the charge stated in the latter part of the 8th ground; and then charged that, if the undertaking of defendant was to pay McManaman in Geise's office, and then that McManaman was to pay Geise & Co., that would not make defendant liable, and the jury should stop right there. The court then stated to the jury, in effect, as to the order mentioned in the evidence, that the question was not whether such order had been accepted by Sext, but whether there was an obligation on him to accept it, in view of whether the plaintiffs' position that the real agree-ment by Sext was that Geise & Co. should take an order from McManaman upon Sext, payable when the job was completed, was true or not.

Soxt *vs.* Geise & Company.

HAYGOOD & DOUGLAS, for plaintiff in error.

CANDLER, THOMSON & CANDLER, *contra.*

BLECKLEY, Chief Justice.

Under the evidence in the record, the main question was whether there was a valid debt as between the parties litigant. The charge of the court, carved up as in the motion for a new trial, may contain inaccuracies, but the whole charge taken together is free from substantial error, though it embraces some matter which we deem irrelevant. If the supply of lumber was about to stop, and the owner of the building procured its continuance by promising to pay for it, his undertaking was not collateral but original, and he is bound. We rather think the evidence makes this case, and we should be satisfied with the verdict were it not that, according the evidence, the time for payment was not on delivery of the lumber, but when the job was finished; and it was not shown either that the job was finished or that a reasonable time for that purpose had elapsed before the suit was brought. The court should have instructed the jury as requested, that " If Sext promised to pay when the house was finished, then the burden of proof is on the plaintiffs to show that it was finished at the time of filing the suit." The equivalent of this would have been to show that a reasonable time had elapsed for completion to have taken place, but there was no evidence of the one fact or the other. There is no reason why the parties should not abide by their contract as to the time of payment as well as in other respects, and if the account was mature when the action was brought, there is no reason why the plaintiffs below should not have made it so appear. Both the court and the jury seem to have disregarded this feature of the testimony, for the court instructed the jury that the account would bear interest from the date of the last item, (October 9th, 1883,) and the verdict so provides. There is no hint in the evidence that

the account was due on the 9th of October.    On the con-
trary, the agent of the plaintiffs testified that the bulk of
the lumber was delivered after the written order from
McManaman was procured, and that order bears date on
the 9th of October.    The action was commenced December
22, 1883.    Let the case be tried over.

Judgment reversed.