FERST'S SONS & CO. *v.* BANK OF WAYCROSS.

If a debtor apply to his creditor for further credit for goods to be used in connection with his business, which the creditor refuses, and a third person, pecuniarily interested in the success of the debtor's business, agree to assume the debt if the creditor will extend further credit; and the creditor discharge the debtor from the debt, look to the third person for payment thereof, and extend to the original debtor further credit, the promise by the third person to pay the original debt is not collateral, but an original undertaking, and need not be in writing.

Submitted May 23,—Decided July 11, 1900.

Complaint. Before Judge Bennet. Ware superior court. August 23, 1899.

*Toomer & Reynolds*, for plaintiff.
*Leon A. Wilson*, for defendant.

SIMMONS, C. J. In the petition of M. Ferst's Sons & Co., against the Bank of Waycross, substantially the following facts are alleged: In November, 1896, Lee was indebted to plaintiffs in the amount of $618.09. He was carrying on a railroad wood and cross-tie business, and applied to them for a further line of credit, which they refused. Lee was indebted to the Bank of Waycross in a large amount, and the bank was interested pecuniarily in Lee's business, for the reason that Lee had agreed to deposit his gross receipts with the bank in payment of his debt to it, the bank allowing Lee to draw from it only the amount actually expended in the conduct of his business, there-

by retaining the balance as a credit on Lee's debt to it. The credit applied for by Lee was for goods and merchandise to be used in his business. When the plaintiffs refused to extend further credit to Lee, the bank, in order that Lee might carry on his business, agreed that if the plaintiffs would extend further credit to Lee, it would pay them the debt owed them by Lee, the agreement being that Lee should draw his draft on the bank in favor of the plaintiffs, and that the bank should accept this draft. In accordance with this agreement, plaintiffs extended further credit to Lee and sold him on credit goods to a large amount. They released Lee from his obligation, and looked solely to the bank for payment. Lee drew a draft on the bank in their favor for the amount of his original debt, and the bank refused to accept it. Since that time, Lee died, insolvent. This petition was demurred to upon several grounds, principally upon the ground that the agreement relied upon was within the statute of frauds, and was void because not in writing. The demurrer was sustained, and the plaintiffs excepted.

We think that, under the facts above stated, the promise of the bank to pay to the plaintiffs the debt of Lee was an original and not a collateral undertaking. Lee had applied for additional credit, and it had been refused upon the ground that he had not paid the old account. Upon the success of his business depended the payment of the large debt he owed the bank. Unless he could get supplies to run his business, he would necessarily fail and the bank lose its debt. In order to enable Lee to carry on his business, the proceeds of which were to go to the bank, the bank undertook to pay the antecedent debt if the plaintiffs would extend further credit to Lee. The plaintiffs agreed, and extended Lee further credit to the amount of several hundred dollars. They discharged Lee from the debt, and looked solely to the bank. Here, then, was a consideration moving to the bank, not for the benefit of Lee but for its own benefit, enabling Lee to continue his business and the bank to receive the proceeds of that business. There was also hurt or damage to the plaintiffs, for they relied upon the promise of the bank, extended further credit, and thus lost the amount for which Lee was credited. The consideration for the bank's prom-

ise was beneficial to the bank and hurtful to the plaintiffs. In the leading case of Leonard *v.* Vredenburgh, 8 Johns. 29, Chief Justice Kent, after defining two classes of cases within the statute of frauds, said (p. 39): "A third class of cases, and to which I have already alluded, is when the promise to pay the debt of another arises out of some new and original consideration of benefit or harm moving between the newly contracting parties.". This class, he said, is not within the statute of frauds. This case has been followed by a majority of the courts of this country, and the principle seems now to be well established. In the present case the promise made by the bank was not for the benefit of Lee, the debtor. According to the allegations of the petition, the bank made the agreement for its own benefit. In discussing this subject, the Supreme Court of the United States, in the case of Emerson *v.* Slater, 22 How. 28, said: "Whenever the main purpose and object of the promisor is not to answer for another but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability." In the case of Hopkinson *v.* Davis, 5 Phila. 147, Hare, J., said: "The weight of authority would seem to be, that when a promise to be answerable for the debt of another is based, not only upon a new consideration, but upon a consideration which moves to and benefits the promisor by inducing delay in the institution of proceedings that might otherwise . . break up a business in which he is interested, the obligation is in fact his own debt, notwithstanding its form, and consequently not within the statute of frauds." See also Reed, St. Fr. § 69 et seq, and the able and learned opinion of Savage, C. J., in Farley *v.* Cleveland, 4 Cow., 432, where he reviewed many cases and came to the conclusion that in all cases "founded upon a new and original consideration of benefit to the defendant, or harm to the plaintiff, moving to the party making the promise, either from the plaintiff or the original debtor, the subsisting liability of the original debtor is no objection to the recovery." In the case of *Sext v. Geise,* 80 *Ga.* 698, this court held: "If whilst a house is build-

ing the supply of lumber is about to stop because the contractor is not considered safe, and the owner of the building procures its continuance by promising to pay the bill, his undertaking is not collateral but original."

Counsel for the defendant in error claimed that Lee does not appear to have been a party to this transaction or to have agreed to it. We think there is enough in the petition to show that Lee was a party to the agreement. It is alleged that Lee applied for additional credit, that it was refused, and that, "then and there," the bank, through its proper officer, made the promise to pay Lee's debt, agreeing to do so by accepting his draft upon it. It is also alleged that Lee did draw the draft but that the bank refused to accept it. The drawing of the draft showed that Lee understood the contract and was a performance of his part of it. It appears that on the same day or shortly thereafter he bought goods from the plaintiff and obtained credit by virtue of the contract with the bank. While nearly all the cases we have read hold that if the debtor is released, the promise is a new and original one and binding on the promisor though not in writing, yet there are many cases holding that an oral promise may be binding even where the original debtor is not released. In the case of *Green* v. *Collins*, 36 *Ga.* 580, it was held, in substance, that where, in consideration of the agreement of the guarantor or promisor, the creditor loses the means of enforcing his claim against the original debtor, it is not usually material whether the original debtor remains liable or not. However this may be, we think that the petition in the present case sufficiently shows that Lee agreed to the arrangement by which the bank was to assume his debt, even if it were granted that his drawing the draft was not a ratification. In the case of *Brown* v. *Harris*, 20 *Ga.* 403, Benning, J. said (406): "In our opinion 'a mere substitution by plaintiff of Rogers & Meara as debtor, in the place of Brown & Harris,' would *of itself*, have abrogated the debt as to Brown & Harris. That, as we conceive, would be the *necessary* effect of such a substitution." It would seem from this that if the contract was as set out in the petition now under consideration, and the bank was to be substituted for Lee as debtor, this would of itself be a discharge of Lee from liability, whether such dis-

charge were expressly mentioned or not. The allegations would seem to show that Lee was present, in which event there can be no doubt in regard to the matter. See also *Anderson* v. *Whitehead,* 55 *Ga.* 277 ; *Goolsby* v. *Bush,* 53 *Ga.* 353; *Davis* v. *Tift,* 70 *Ga.* 52.

It was also insisted, in the argument here, that such a promise by the bank was ultra vires and not binding. That question is, in our opinion, a matter for plea and not for demurrer. As the case comes here on demurrer, we can not say whether the act was ultra vires or not. The charter of the bank is not before us, and we do not know what powers are by it given to the bank or to the bank's president.

    *Judgment reversed. All the Justices concurring.*