## COLDWELL COMPANY *v.* COWART.

1. A declaration in attachment alleged in substance as follows: An owner of timbered land sold and conveyed the cypress and hardwood timber located thereon, suitable for sawmill purposes, to another on a credit, but expressed no time which the grantee should have within which to cut and remove such timber. Two years would have been a reasonable time therefor. Sometime thereafter the grantee desired to borrow money from a corporation which was a dealer in lumber and hardwood, and which was desirous of making the loan on terms that would be advantageous to it, including the purchase of the product of the sawmill. The company was unwilling to advance the sum to the grantee, unless he could secure from the grantor and transfer to it as security the right to have ten years in which to cut and remove the timber. The grantee applied to the grantor for that purpose. The grantor agreed, provided a certain part of the purchase-money should be paid, and two notes of equal amount should be given by the grantee for the balance, due at three and six months respectively, and that the corporation would agree to assume and pay such notes. Through its officer it orally agreed to do so. The additional grant of time was made to the grantee, and he executed the notes, and transferred the grant to the corporation as security. The instrument so executed recited that, whereas it was agreed that the purchaser should have ten years in which to exercise the rights conferred on him, and this was omitted from the "lease," "it is now agreed" that he shall have ten years within which to exercise such rights. Subsequently he became a bankrupt, and the grantor sued the corporation on its parol promise to pay the notes of the grantee. *Held*, that in a suit against the company, based on its promise, such recitals did not estop the grantor from alleging and proving that in fact there was no mistake in the original agreement, but the grant of ten years within which to exercise the privilege was a new agreement, and the consideration was the promise of the defendant to pay the notes of the grantee.

2. Such promise was one to answer for the debt of another person, and was within the statute of frauds.

(*a*) The ground of demurrer to a suit on such parol promise, setting up the statute of frauds, should have been sustained.

MAY 18, 1912. REHEARING DENIED JUNE 13, 1912.

Attachment. Before Judge Worrill. Early superior court. January 3, 1911.

J. S. Cowart brought suit by attachment against the W. E. Coldwell Company. As amended, the declaration alleged in substance as follows: On July 16, 1906, the plaintiff sold to T. A. Bailey all the cypress and hardwood timber suitable for sawmill purposes, located upon certain land, for the sum of $2,000, for which credit was extended. No time was specified in which to cut and remove the timber from the land, and therefore only a reasonable time was

allowed. Two years would have been a reasonable time. About six months after the contract was made, and before any of the timber was cut, the creditors of Bailey were pressing him. The Coldwell Company was a dealer in lumber and hardwood products, and was a large and wealthy company. It desired to advance to Bailey a sum sufficient to enable him to arrange with his creditors, provided he would mortgage to it certain property and enter into a contract to sell and deliver to it the entire output of his sawmill at a price which would be very profitable to the company. After negotiation, the company was unwilling to advance the sum, unless Bailey could secure from the plaintiff and transfer to it the right to have ten years in which to cut and remove the timber. In order to carry into effect this arrangement, Bailey approached the plaintiff with a request to sign an instrument giving to him ten years in which to cut and remove the timber. The plaintiff agreed to this, provided that he should be paid $580 of the $2,000 purchase-money, and interest then due, and that for the remaining $1,500 of the purchase-price two notes should be given by Bailey, each for $750 with interest, due three and six months after date respectively, and that the Coldwell company would agree to assume and pay these notes, whether Bailey's business or arrangement with the company proved successful or not. The company orally agreed to assume and pay the notes, if the plaintiff would execute and deliver to Bailey an instrument in writing giving ten years in which to cut and remove the timber, it being in contemplation of the parties that such instrument would be at once transferred by Bailey to the company. The plaintiff executed such an instrument, and delivered it to one James, for the company, as was agreed, but, in order to more perfectly secure the payment of the notes, inserted in the paper a proviso to the effect that if the notes were not paid at maturity. the instrument should be void. Plaintiff was informed by James, acting for the company, that the instrument was not in accordance with the agreement, and was assured that, inasmuch as the company was perfectly responsible, no security was necessary. Believing this to be true, he re-executed the instrument, omitting the proviso. He was under no legal or moral duty to execute such an instrument prior to the making of the promise by the company, there having been no agreement on his part prior to that time to give Bailey any fixed time in which to cut and remove the timber;

and the recital in the instrument to that effect, and that the time in which the timber could be cut was left out of the original contract by mistake, was not true. Such recital "was inserted merely to comply with what plaintiff and said Bailey then believed to be a necessary legal form, and for no other reason; and this was well known to the defendant at the time when it promised to pay said notes and when said instruments were so executed and delivered by plaintiff." It was added, that, if the court should deem it necessary, the instrument last executed should be reformed by striking from it the untrue recital; and it was alleged that Bailey recognized the truth of these allegations and stood ready to be made a party defendant and to consent to the reformation. It was prayed that, if it should be necessary to the exercise of the plaintiff's rights, this should be done. The instrument thus executed was at once transferred by Bailey to the defendant company as a part of the security given by him to it, along with other security, and a contract in regard to cutting and furnishing lumber to it. Some months later Bailey became a bankrupt.

A copy of the instrument referred to in the plaintiff's declaration is as follows: "Georgia, Calhoun County. Whereas it was agreed between J. S. Cowart and T. A. Bailey that the said Bailey would have ten years within which to exercise the powers and rights granted to him on a certain instrument of lease from J. S. Cowart to T. A. Bailey, dated July 16th, 1906, to 200 acres more or less of timber in the swamp of Caney Creek in Baker County, Georgia; and whereas the length of time, to wit ten years, was by mistake omitted from lease, it is now agreed that said Bailey shall have ten years from July 16, 1906, within which to exercise the powers granted in said instrument."

The defendant demurred to the plaintiff's declaration, on a number of grounds. Some of the grounds of special demurrer were sustained, and others were overruled. The general grounds were overruled. The defendant excepted.

*J. R. Pottle* and *C. L. Glessner,* for plaintiff in error.

*L. M. Rambo* and *Pope & Bennet,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. The defendant excepted to the overruling of certain grounds of demurrer to the plaintiff's declaration in attachment. A question in the case, and the one to which the argument was largely

directed, was whether the recital in the instrument executed by the plaintiff to Bailey, and which was transferred to the defendant, in regard to the omission from the former contract with Bailey of a certain time in which the timber could be cut and removed, could be shown to be untrue. The plaintiff contended that this recital was merely in regard to the consideration for the executing of the paper, and could be disproved. The defendant contended that it was not a recital of that character, but was one which worked an estoppel upon the plaintiff, who executed it, and could not be disproved.

The recital in a deed of the receipt of the purchase-money does not estop the maker from denying the fact and proving the contrary. Civil Code (1910), § 4188. "Recitals in deeds, except payment of purchase-money, as against the grantor" and his privies, generally work an estoppel. § 5736. The consideration of a deed may always be inquired into when the principles of justice require it. § 4179. Ordinarily where the statement in a deed as to a consideration is merely by way of recital, the actual consideration of the deed is subject to explanation. But if the consideration is referred to in the deed in such a way as to make it one of the terms or conditions of the contract, it can not be varied by parol. This statement, in connection with the rule against permitting the terms of a written contract to be changed by parol, will serve to reconcile a number of rulings where evidence has been admitted to show what was the consideration of the deed or contract with others in which it has been rejected. As illustrations of cases of the first character mentioned, see *Horn* v. *Ross & Leilch,* 20 *Ga.* 210 (65 Am. D. 621); *Burke* v. *Napier,* 106 *Ga.* 328 (32 S. E. 134), and cit.; *Stone* v. *Minter,* 111 *Ga.* 45 (2), 53 (36 S. E. 321); *Marlin* v. *White,* 115 *Ga.* 866 (42 S. E. 279); *Goette* v. *Sutton,* 128 *Ga.* 179 (57 S. E. 308); *Pavlovski* v. *Klassing,* 134 *Ga.* 704 (68 S. E. 511). For cases of the latter character see *Wellmaker* v. *Wheatley,* 123 *Ga.* 201 (51 S. E. 436), and cit.; *Atlas Tack Co.* v. *Exchange Bank,* 111 *Ga.* 703 (36 S. E. 939); *Louisville & Nashville R. Co.* v. *Holland,* 132 *Ga.* 173 (63 S. E. 898); *Louisville & Nashville R. Co.* v. *Willbanks,* 133 *Ga.* 15 (65 S. E. 86); *Southern Bell Telephone and Telegraph Co.* v. *Smith,* 129 *Ga.* 558 (59 S. E. 215). Under the guise of inquiring into the consideration of a deed, it is not competent by parol evidence to

change the terms of the deed, or add new terms thereto. The point which we are now considering must not be confused with that involved in cases where a party in pari delicto will not be allowed to set aside his executed conveyance by asserting his own fraud, such as *Parrott* v. *Baker*, 82 *Ga.* 364 (9 S. E. 1068).

In 16 Cyc. 699, it is said: "All parties to a deed are bound by the recitals in it legitimately appertaining to the subject-matter. Recitals of matter of fact in a deed are ordinarily binding on the grantor. They are binding also on the grantee and his successors in estate, where he or they base their rights on the deed, but not otherwise." And on page 702, it is said: "A recital works an estoppel only in an action founded on a deed or brought to enforce rights arising under it. While in a collateral action it may constitute evidence against the one party or the other, it is not conclusive." See, also, 2 Herman on Estoppel, § 628; Bigelow on Estoppel (5th ed.), 352. The leading case on the subject is that of Carpenter *v.* Buller, 8 Mees. & Wels. 209, in which it is ruled: "Where a distinct statement of a particular fact is made in the recital of a bond or other instrument under seal, and a contract is made with reference to that recital, it is not, as between the parties to the instrument, and in an action upon it, competent to the party bound to deny the recital; and a recital in an instrument not under seal may be such as to be conclusive to the same extent. But a party to an instrument is not estopped, in an action by another party, not founded on the deed, and wholly collateral to it, to dispute the facts so admitted; but evidence of the circumstances under which such admission was made is receivable to show that the admission was inconsiderately made, and is not entitled to weight as a proof of the fact it is used to establish." Since this case was decided in 1841 it has been widely cited. In re Morgan, 2 L. R. Ch. Div. 72; Macaulay *v.* Marshall, 20 U. C. Q. B. 273; Goodspeed *v.* Fuller, 46 Me. 141 (71 Am. D. 572); Harrison *v.* Castner, 11 Ohio St. 339; Champlain & St. Lawrence R. Co. *v.* Valentine, 19 Barb. (N. Y.) 484; King *v.* Mead, 60 Kans. 539 (57 Pac. 113); Reed *v.* McCourt, 41 N. Y. 435.

In most, if not all, of the cases relied on by the plaintiff in error, an effort was made by a party to a deed or his privies in estate to assert title to the property conveyed, by virtue of the deed, or in conflict with its recitals or terms. Thus in *McCleskey* v.

*Leadbetter,* 1 *Ga.* 551, the action was one of trover to recover certain slaves. A written instrument was introduced in evidence, which recited that the maker, under whom both parties claimed, had previously conveyed the negroes, that the conveyance was lost or mislaid, and that the maker executed the second instrument so as to relinquish all title which might remain in him. It was said that the recital of the execution of a previous deed was evidence of the fact, and binding upon the party making it and his privies. In *Thrower* v. *Wood,* 53 *Ga.* 458, an act of the legislature was passed, legitimating a child. Afterward the alleged father made a deed of gift to his three children, naming the above-mentioned child as one of them. In a subsequent proceeding to partition the land, it was held, that, "In a suit for and concerning the very land conveyed by the deed," the recital of the relationship was conclusive as against any one claiming the land under or by virtue of the deed. In *Long* v. *Bullard,* 59 *Ga.* 355, the action was commenced by suit on a promissory note. The plaintiff was allowed to amend by alleging, that the money was loaned to pay a debt which was secured by a mortgage on land; that prior to the foreclosure of the mortgage the landowner and his wife had obtained a homestead, and, to secure the money advanced by the plaintiff, executed a deed to him, which described the property as having been set apart as a homestead. A sale of the property and payment of the debt from the proceeds was prayed. The court charged that the homestead was void for lack of jurisdiction in the ordinary, who granted it, to do so. It was held that the grantee, who accepted the deed with the recital that the property had been set apart as a homestead and was conveyed with the approval of the ordinary, was estopped from denying the validity of the homestead.

Applying the principles above discussed to the case in hand, it will be seen that the present suit is not an effort to recover the property conveyed; nor is the written instrument relied on to defend against such an effort. It is not a proceeding to enforce the written instrument, considered as a grant or conveyance, or to attack the conveyance or grant of a right therein specified. The suit is one to recover a consideration alleged to have been promised for the making of the instrument. It is more nearly analogous to a suit to recover the purchase-price recited in a deed to have been paid. The recital in the instrument is that "whereas" Cowart

agreed with the other party, Bailey, that the latter would have ten years within which to exercise the powers and rights granted to him in what is called a "timber lease," in regard to the timber on certain land, and the time mentioned was by mistake omitted from the lease, "it is now agreed that said Bailey shall have ten years from July 16, 1906 [the date of the former instrument], within which to exercise the powers granted in said instrument." The grant of such time is a present grant. The second instrument does not in terms agree to the correction of the former lease by the insertion of another provision in it. If it had done so, such an expression in the contractual part of the instrument might not have been open to disproof by parol, unless the instrument were reformed, under proper allegations and proof. One of the meanings of the word "whereas" given by the lexicographers is "considering that." Webster's Dictionary. See, also, Dean *v.* Clark, 80 Hun (N. Y.), 80, 83. We recognize the distinction between mere motive and consideration. But the terms of the instrument now before us would seem to indicate rather a recital of a consideration than of facts simply indicating motive, or forming an integral part of the terms of the contract. Moreover, the plaintiff alleged that he and Bailey put such recital into the written instrument to comply with what they thought was a necessary legal form, and for no other reason; that there had in fact been no previous agreement to allow ten years within which to cut and remove the timber, and such statement was untrue; and that this was well known to the defendant company, to which the contract was transferred by Bailey, when it made the promise to pay Bailey's notes.

Of course, upon the trial of such an issue, a written admission upon the part of the plaintiff as to the facts would be admissible in evidence, although it might not amount to an estoppel by deed. Whether the jury would believe such written admission, or the parol testimony offered by the plaintiff, would be for their determination. While such recitals may not in themselves operate as estoppels by deed, statements or representations in a written instrument may sometimes furnish a basis for an estoppel in pais, or an equitable estoppel, if they induce action on the part of another detrimental to him, so that it would be a fraud to permit the person making such statements to deny them. There was no error in overruling the general demurrer based on the ground that the recital in the instrument last executed worked an estoppel.

2.  Another point raised by the demurrer was that the declaration showed on its face that the alleged promise declared on was within the statute of frauds, and there was nothing to take it without the operation of that statute.  Counsel for defendant in error in their brief discussed this point, and cited authorities in regard to it.  In the brief of counsel for plaintiff in error there was only a passing statement as to insisting on other grounds of demurrer than that above considered.  But we think that the question of the applicability of the statute of frauds is sufficiently presented to necessitate a consideration of it.

Few enactments have given rise to more confusion and conflict in decision than the statute of frauds.  In Fullam *v.* Adams, 37 Vt. 391, 393, referring to the section of the statute now under consideration, Poland, C. J., said.  "The question, whether the defendant's promise was valid without writing, opens the door to an examination to an almost endless extent of judicial discussion and determination, both in England and in this county, and we can hardly hope to do more than to add another decision to the long line, which may serve to perplex future explorers into the true extent and meaning of this section of this ancient statute."

On the subject of what is an original promise which is not within the statute, and what is a collateral promise which falls within its purview, two general lines of authority have arisen, besides many rulings touching modification of the general rules and special exceptions.  In 1811 the leading case of Leonard *v.* Vredenburgh, 8 Johns. (N. Y.) 29 (5 Am. D. 317), was decided.  The actual questions before the court were whether a guaranty by a third person to pay the price of a bill of goods, made in writing at the time of the sale, had to express the consideration for the undertaking of the promisor; and whether certain parol evidence was admissible to show that the principal debtor had applied to purchase the goods for which the writing was given, and that credit had been refused to him without security for the payment, whereupon a third party (who was a defendant) signed the instrument as a guarantor, and the goods were delivered; also that such third person later promised to pay for the goods, and that he had been secured against loss, and the purchaser was insolvent when the goods were delivered and afterward.  In discussing the case, the learned Chief Justice Kent made the following statement:  "There are, then, three distinct

classes of cases on this subject, which require to be discriminated: 1. Cases in which the guaranty or promise is collateral to the principal contract, but is made at the same time, and becomes an essential ground of the credit given to the principal or direct debtor. Here, as we have already seen, is not, nor need be, any other consideration than that moving between the creditor and original debtor. 2. Cases in which the collateral undertaking is subsequent to the debt, and was not the inducement of it, though the subsisting liability is the ground of the promise, without any distinct and unconnected inducement. Here must be some further consideration shown, having an immediate respect to such liability, for the consideration for the original debt will not attach to this subsequent promise. : . 3. A third class of cases, and to which I have already alluded, is when the promise to pay the debt of another arises out of some new and original consideration of benefit or harm moving between the newly contracting parties. The two first classes of cases are within the statute of frauds, but the last is not."

In Mallory v. Gillett, 21 N. Y. 412, decided in 1860, a plaintiff, having repaired A's boat, refused to deliver it until he was paid for his work. A third person, in consideration of the relinquishment of plaintiff's lien, and of forbearance to sue the original debtor, orally promised the plaintiff to pay the debt at a certain future time. The plaintiff delivered the boat to A, and the third person so promising paid part of the debt. In an action to recover the balance, it was held by a majority of the judges that the defendant's promise, not being in writing, was within the statute of frauds. A minority of the judges dissented, holding that the case fell within the ruling in Leonard v. Vredenburgh, supra. Comstock, C. J., filed an exhaustive opinion on behalf of the majority of the court. By way of explanation or modification of Judge Kent's statement as to the third class of cases, it was said that the consideration must move *to* the person making the promise. A distinction was thus drawn between a consideration arising from the promisee's being induced to act to his injury by releasing to the original debtor a lien against the property delivered, and a consideration moving *to* the person making the parol promise,—a distinction which has been questioned. These cases have been followed more or less closely by a number of others, and in some of them

modifications of the original statements have been made. Some courts have declared that the question was not so much to be determined by what was the consideration for the new promise, or between whom it moved, as by whether the leading purpose of the promisor was, for a consideration, to assume a primary obligation to pay the debt, rather than a secondary or collateral one; and from this has arisen what is sometimes called "the leading purpose" test. Another line of cases rejects the classification made by Chief Justice Kent, especially as to the third class. In Fullam *v.* Adams, 37 Vt. 391, supra, the defendant retained the plaintiff as his attorney in any litigation that might grow out of a conveyance to him by his brother, who had failed, and, in consideration of such retainer promised the plaintiff verbally to pay him one half of a debt due to the plaintiff by the defendant's brother, and also promised to pay the plaintiff for his services, if he performed any. It was held that the defendant's promise to pay the debt of his brother to the plaintiff was a promise within the statute of frauds, and that, not being in writing, it could not be enforced. It was said that "A verbal promise to pay the debt of another, where the original debt still subsists, is never legally binding, except where the promisor has received the funds or property of the debtor for the purpose of being so applied, so that an obligation or duty rests upon him, as between himself and the debtor, to make such payment, whereby his promise, though in form to pay the debt of another, is in fact a promise to perform an obligation or duty of his own." This ruling was not dependent upon any lack of consideration for the promise, for it was held that a retainer of an attorney was a sufficient consideration for a promise to pay such attorney a debt due him by another, if the promise were in writing. In Maule *v.* Bucknell, 50 Pa. 39, where a majority of the directors of a corporation transferred part of their stock and resigned as directors, in order that their transferees might be elected in their stead and have control of the affairs of the company, in consideration of their parol promise to pay all the debts; and where, after such transfer and election but a small portion of the debts was paid, in consequence of which the corporate property was sold by the sheriff and a large part of the indebtedness was left unpaid and lost, including a debt due by the company to one of the original directors, who was a promisee; in an action by him to recover

against the promisors, it was held that the promise was within the statute of frauds, and the plaintiff could not recover. The court rejected the theory that, as a general rule, a promise to pay the debt of another was not within the statute of frauds, if it rested upon a new consideration passing from the promisee to the promisor. It was said: "A new consideration for a new promise is indispensable without the statute, and if a new consideration is all that is needed to give validity to the promise to pay the debt of another, the statute amounts to nothing." On the general subject see Sherman v. Alberts, 126 Am. St. R. 486, and note (153 Mich. 361, 116 N. W. 1090).

These cases suffice to illustrate the wide diversity of views in regard to the theory that a new promise, based on a new consideration moving to the promisor, will take the case without the statute. It would too greatly protract this opinion to discuss the various exceptional cases and modifications of these two general views. Only a few will be mentioned. One of the most common is that mentioned in the Vermont case above cited, and sometimes called "the funds rule." Another is where the promise is not made to, or sought to be enforced by, the holder of the original debt, but where, for a proper consideration, a third person agrees with the debtor to pay the debt of the latter. As an instance of this sort may be mentioned a case in which one takes an assignment of a bond for title from the holder thereof, under a contract to pay the purchase-money due to the original vendor. This has been treated as another form of promise to pay the purchase-money due to the assignor, the payment being agreed to be made to his creditor instead of him; and such a promise has been held not to be within the statute of frauds. *Ford* v. *Finney, 35 Ga.* 258; *Martin* v. *Copeland, 77 Ga.* 374 (3 S. E. 256). So, where one purchases property on which rests a lien to secure a debt, and in order to relieve the property or prevent a foreclosure and sale, and to secure further supplies, promises to pay the debt, this has been held to be an original promise, and not within the statute of frauds. *Woolen* v. *Wilcox, Stilson & Co., 87 Ga.* 474 (13 S. E. 595)   See, also, *Bohannon* v. *Jones, 30 Ga.* 488; *Davis* v. *Banks, 45 Ga* 138. Cases in which, by agreement, a creditor releases one debtor and substitutes another in his place, do not fall within the statute. It is plain that if a person making a new promise becomes the sole

debtor, for a legal consideration, such a promise can not be collateral; for the original promise has been extinguished, and there is nothing to which the new promise can be collateral. There are a number of cases of this character in the Georgia Reports. As an example see *Harris & Price* v. *Young,* 40 *Ga.* 65; *Anderson & Tucker* v. *Whitehead, Eggleston & Co.,* 55 *Ga.* 277; *Ferst* v. *Bank of Waycross,* 111 *Ga.* 229 (36 S. E. 773). In the case last mentioned Leonard *v.* Vredenburgh and other similar cases are cited in the opinion, but finally the decision rested upon the substitution of one debtor for another; and this court has not gone to the length of the rulings made by the New York courts. The case of *Burruss* v. *Smith & Turner,* 75 *Ga.* 710, grew out of the peculiar relation of landlord and "cropper." The cropper had given a mortgage on cotton to a third party. The landlord was about to sell it. The mortgagee resisted the sale and threatened to stop it. In order to free the cotton, the landlord promised to pay the debt of the cropper for advances made by the mortgagee in raising the crop. Under the relation mentioned, he himself had a title to the cotton, and thus was freeing it from the lien asserted upon it. His promise was held to be original and not collateral. In the opinion Chief Justice Jackson referred to the question of whether there was a consideration; but it will be seen to take its place with other cases which have been cited. In *Sext* v. *Geise & Co.,* 80 *Ga.* 698 (6 S. E. 174), it was held that if, whilst a house is being built, the supply of lumber is about to stop because the contractor is not considered safe, and the owner of the building procures its continuance by promising to pay the bill, his indebtedness is not collateral but original. No distinction seems to have been considered between lumber thereafter furnished to the owner upon his own credit and any amount which the contractor might have owed for what had already been furnished. The verdict was for less than the amount sued for. After stating the rule as above announced, Chief Justice Bleckley merely said: "We rather think the evidence makes this case, and we should be satisfied with the verdict, were it not that, according to the evidence, the time for payment was not on delivery of the lumber, but when the job was finished; and it was not shown either that the job was finished or that a reasonable time for that purpose had elapsed before the suit was brought." This was all that was said on the subject.

Omitting further discussion of the consideration theory, and of special instances where the promise is in reality to pay the promisor's own debt, though in form or name to pay the debt of another, we come to consider another general rule. In 20 Cyc. 186, it is said that "It is a general rule that an oral promise to pay the pre-existing debt of another, in consideration that the original debtor shall be discharged from liability thereon, is not within the statute. . . But if the debtor is not discharged and the original debt still subsists concurrently with the oral agreement to assume it, the latter is within the statute of frauds and is void as a collateral agreement to answer for the debt of another." In *Davis* v. *Tift*, 70 *Ga.* 52, 55, Hall, J., treated the discharge of the original debtor as a test which might be used to determine whether the promise to pay a pre-existing debt of another was original or collateral, and quoted approvingly the following from Sergeant Williams: "The question is, what is the promise? It is a promise to answer for the debt, default, or miscarriage of another, for which that other remains liable? Not what the consideration for that promise is; for it is plain that the nature of the consideration can not affect the terms of the promise itself, unless, as in the case of *Goodman* v. *Chase*, 1 B. & A. 297, it be an extinguishment of the liability of the original party."

In *Strauss* v. *Garrett*, 101 *Ga.* 307 (28 S. E. 850), Strauss brought suit against Kaufman and Garrett & Sons, alleging, that Kaufman was indebted to him, and that Garrett & Sons undertook and agreed to assume the payment of the debt, in consideration of the transfer by Kaufman to them of certain merchandise and the agreement by plaintiff to refrain from interfering with or preventing such transfer; that the transfer was made, plaintiff not interfering in any way to prevent it, and thereby Kaufman was rendered insolvent; that plaintiff had no lien upon the property to secure his debt, but that he could have obtained security for and final payment of his debt if the transfer had not taken place; and that he had frequently demanded payment of the defendants, but all of them had refused to pay. It was held, that, the promise of Garrett & Sons to pay the plaintiff the amount due to him by Kaufman being in parol, and Kaufman being bound on the debt to plaintiff, "it was a clear case of a promise to answer for the debt of another person, and the obligation thus undertaken was not bind-

ing." Birkmyr *v.* Darnell, 2 Smith's Leading Cases, 522, was cited. A judgment sustaining a demurrer as to Garrett & Sons was affirmed. See, also, *Palmetto Mfg. Co.* v. *Parker & Anderson,* 123 *Ga.* 798, 800 (51 S. E. 714). In *Bluthenthal & Bickart* v. *Moore,* 111 *Ga.* 297 (36 S. E. 689), H. was indebted to B., and the debt was secured by a mortgage which had been foreclosed. W. purchased the mortgaged goods from H., assumed the debt of H., and gave his promissory notes therefor to B. M. orally agreed to see that W's. notes were paid; and thereupon B. released H. and cancelled the mortgage. It was held that the promise of M. was within the statute of frauds, and void because not in writing; and this was true although the creditor had released the mortgagor and cancelled the mortgage, thus losing his security.

In one or two cases mention has been made of whether there had been performance or part performance of such a character as to take the case out of the statute of frauds. But it will be found that in such cases there was a substitution of one creditor for another, and not merely the furnishing of a consideration for the promise. Otherwise every promise to answer for an antecedent debt of another would either be void for want of a consideration, as would be any contract, or would be taken out of the statute of frauds if there was a consideration, as pointed out in the Pennsylvania case above cited.

How then stands the present case with reference to these rules? The plaintiff, Cowart, had already granted to Bailey the right to cut the timber, and Bailey was already indebted to him therefor. Cowart had no lien or other security. The plaintiff did not release Bailey, but on the contrary required him to give new notes. He took no written promise from the Coldwell Company. He conveyed nothing directly to the latter company. He made a conveyance to Bailey, which would prove beneficial to the Coldwell Company through contracts contemplated to be made between that company and Bailey. This would have furnished a sufficient consideration for a written promise by that company; but, under the decisions of this court above cited, the parol promise alleged to have been made by the Coldwell Company to the plaintiff was within the statute of frauds. The allegations in regard to inserting a proviso to the instrument so executed, and then striking it out on the objection of one James, were not sufficient to change this ruling.

It was alleged that the instrument was to be delivered to him for the defendant company; that, "acting for the Coldwell Company," he informed the plaintiff that the instrument was not in accordance with the agreement, and it was stricken therefrom, and James assured the plaintiff that, as the Coldwell Company was perfectly responsible, no security was necessary. This was not sufficient to show a binding oral promise on the part of defendant company.

Because of the statute of frauds, the demurrer should have been sustained. *Judgment reversed. All the Justices concur.*