## 5596. BAKER *v.* CENTRAL GROCERY COMPANY.

1. The evidence demanded a verdict in favor of the plaintiff.
2. It is no concern of a defendant in an action of trover that the plaintiff asks for and recovers an alternative judgment for a less amount than he might legally be entitled to recover.

DECIDED NOVEMBER 17, 1914.

Trover; from city court of Tifton—Judge R. Eve. March 14, 1914.

*C. C. Hall, J. S. Ridgdill, S. F. Mitchell,* for plaintiff in error.
*Fulwood & Skeen,* contra.

RUSSELL, C. J. Central Grocery Company brought an action in trover against George Baker for the recovery of a car-load of oats, approximately 1,000 bushels, of the value of $635. The testimony adduced on the trial was as follows: B. Y. Wallace, for the plaintiff, testified: I was called over the phone by E. P. Searcy, who stated that his firm had a car of oats in Tifton, shipped to Mr. George Baker, that Baker had refused them as being off grade, and asked me to make an offer for them. I examined the oats and made him an offer. He accepted it and directed me to go to the National Bank of Tifton and take up the draft and bill of lading. I immediately gave Floyd Guest a check for the amount and sent him to the bank, and he returned with the draft and bill of lading for the oats. A little while after that Mr. K. P. Baker, assistant cashier of the bank, came to my office and requested to see the bill of lading, and it was handed to him for inspection. He then handed back the check I had given him for the oats and left with the draft and bill of lading. The price of oats on that day for the same grade of oats and kind was 10 cents per bushel more than the price I paid Searcy for them. The car contained approximately

1,000 bushels. I had a profit in the deal of $100. George Baker then paid the draft and got the bill of lading from the bank and took possession of the car of oats. I immediately made demand on Mr. Baker for the oats and he refused, stating that he had decided to use them himself. E. P. Searcy, for the plaintiff, testified: I am a grain and provision broker at Fitzgerald. I sold the car of oats to George Baker and shipped them to him, "order notify." On arrival he refused to accept the shipment, stating that they were off grade, and offered me 5 cents per bushel less than the contract price for them. I called up Mr. Wallace of the Central Grocery Company and asked him to make me an offer for the oats. He made me an offer and I accepted it and directed Mr. Wallace to take up the draft and bill of lading. When Mr. Baker refused them he had no further interest in them and I sold them to Central Grocery Company. Floyd Guest, for the plaintiff, testified: I work for the Central Grocery Company. Mr. Wallace gave me a check and directed me to take it to the National Bank and take up a draft and bill of lading for a car of oats bought from Mr. Searcy and that had been refused by Mr. George Baker. I handed the check to Mr. K. P. Baker, assistant cashier of the bank, and got the draft and bill of lading in exchange. A little later Mr. K. P. Baker asked for the draft and bill of lading, and it was handed back to him for inspection. He kept it and sent back the check. George Baker, the defendant, testified: The car of oats was the last of four I had bought from Mr. Searcy. When it arrived I found the oats off grade and refused them. I notified Mr. Searcy of the fact by telephone and offered him 5 cents per bushel less than the contract price for them. I afterwards saw Mr. Wallace taking samples of the oats, and decided to take them myself. I telephoned the bank to charge the draft to my account. I delivered the bill of lading to the railroad company, paid the freight, and the oats were delivered to me about 30 minutes after the Central Grocery Company telephoned me they had bought the oats and wanted them. I told them they could not get them. K. P. Baker, for the defendant, testified: I am assistant cashier of the National Bank of Tifton. The draft in question was drawn on George Baker and had been refused by him. Floyd Guest came over with a check from the Central Grocery Company, stating that the Central Grocery Company had bought the car of oats. I accepted the check and de-

livered the draft and bill of lading to him for the Central Grocery Company. Afterwards, George Baker called up over the telephone and told me to charge the draft to his account and deliver the bill of lading to him. I had already delivered it to the Central Grocery Company. I requested them to let me see it, and when they handed it to me I kept it and delivered it to George Baker. I returned to Central Grocery Company its check. Both sides having closed, the court directed a verdict for the plaintiff against the defendant for $100. The defendant moved for a new trial, and to the judgment overruling this motion he excepts.

As will be seen from reading the statement of facts above, the evidence was devoid of details, and was in fact very limited as to the material issues. We are of the opinion, however, that the direction of a verdict for the plaintiff did not require a new trial. The evidence, to our minds, clearly shows that the title to the car of oats had passed to the plaintiff. The consignor of the car testified that he sold, and the plaintiff's main witness (and presumably its agent) that he bought, the oats for the plaintiff. The bank cashier testified that he accepted the check in payment for the bill of lading, and delivered to the plaintiff the bill of lading with the draft attached. The bill of lading was a symbol representing the goods themselves, and its delivery was delivery of the goods themselves. *Raleigh &c.* v. *Lowe,* 101 *Ga.* 320 (28 S. E. 867). It was not necessary, as contended by the plaintiff in error, that the original consignor transfer the bill of lading to the grocery company in writing. Title to the goods had never passed out of the original shipper (Civil Code, § 4134) and the defendant, at that time, had no right to possession. The goods had been shipped to the consignor's order, with a draft attached. He sold the goods to the grocery company, and the grocery company, upon paying the draft, was entitled to the bill of lading representing the goods. When the bank delivered the bill of lading and received payment of the draft, title passed. A bill of lading may be transferred by delivery. *Orr* v. *Planters Phosphate Co.,* 8 *Ga. App.* 60 (3), 63-4 (68 S. E. 779); Hale on Bailments, 127. The plaintiff, therefore, had not only the title to the goods, but also the possession or right of immediate possession thereof. The plaintiff then having title and the defendant none, by what right did Baker, the banker, after accepting the plaintiff's check in payment for the bill of lading and delivering it to

plaintiff, retake it and deliver it to the defendant? There is no evidence that the grocery company assented to or acquiesced in the action of Baker, the banker, but rather it is shown, by implication, that it was done over the objection of the plaintiff, whose agent testified that immediately thereafter he demanded the oats of Baker, as being the oats of the Central Grocery Company. The testimony of the banker, Baker, shows conclusively that possession of the bill of lading was fraudulently taken from the possession of the grocery company, and that deceitful means were used in. obtaining possession. This being true, possession of the bill of lading by the cashier, the bank, the defendant, or any other person, could not divest the grocery company of the title or right of possession of the property. The banker had no title by illegally taking the bill of lading, and therefore could not transfer any to the defendant. Civil Code § 4118. The title of the goods still being in the plaintiff, his action of trover was maintainable. The defense interposed by the defendant was not sustained by the evidence, and, under the undisputed facts in the case, the action of the court in directing the verdict for the plaintiff was not error requiring a new trial.

Under the evidence the plaintiff had the right to elect to take a verdict for the property itself or for its value at the time of the conversion, with interest, or its highest market value proved since the conversion. There is nothing in the record to show what kind of verdict the plaintiff elected to take, or that it elected to take any, but it is inferable, from the verdict rendered and the judgment entered, that there was an election to take a money verdict. *Wolf* v. *Kennedy,* 93 *Ga.* 220 (18 S. E. 433). Let us see then if there was anything on which to base the verdict actually rendered. The plaintiff, in its petition, alleged that the oats sued for were of the value of $635, and the defendant in his answer did not deny this allegation. It is contended, however, that there was no testimony whatever as to value and that the direction of a verdict was illegal. As we have already stated, the plaintiff was entitled, if it chose, to have a verdict for the property. There is evidence that the grocery company had a "profit in the deal, of $100." We can see no other version of this testimony than that the plaintiff, when it bought the oats in question, bought them for $100 less than their value on the day of sale. The day of sale was the day of the conversion. This testimony was not objected to on the trial nor controverted by any

testimony in behalf of the defendant. Certainly, then, if the oats were worth $100 more than the plaintiff paid for them, they were worth the amount of the verdict directed by the court. That the plaintiff chose to take such a verdict gave the defendant no cause for complaint. It is true, as contended, that the evidence on the trial tended to show that it was not the intent of the plaintiff to recover anything other than its damages of $100. Yet technically the plaintiff had a suit in trover which was maintainable; and that trover was chosen as the remedy, instead of other remedies, is no concern of this court, if the trover suit proceeded legally to judgment and no error was committed.

*Judgment affirmed. Broyles, J., not presiding.*