### 6423. HICKS v. WALKER.

1. Where, in consideration that a third person be allowed to take possession of and remove from the premises of B. to the premises of A. certain crops raised by the third person on the lands of B., and to which B. had title, A. agreed to become responsible for and pay to B. the amount due by the third person to B., as soon as a settlement could be had between them and the exact amount of the indebtedness ascertained, the contract was an original undertaking, based upon a valuable consideration, and not a contract which the statute of frauds required to be in writing.
2. The method by which a jury reaches a particular verdict is not a matter of which this court can take judicial cognizance. So far as this court is concerned, it is sufficient that a verdict is authorized by evidence, and it is not ground for complaint by a losing party that the jury allowed his opponent in the action a less amount than they might lawfully have awarded.
3. There is no merit in any of the grounds of the demurrer and the court did not err in overruling the motion for a new trial.

DECIDED DECEMBER 3, 1915.

Complaint; from city court of Wrightsville—Judge Hatcher. February 15, 1915.

The action was by J. M. Walker against Jupe Hicks. The peti-

tion alleged: Jupe Hicks is indebted to petitioner in the sum of $195.56, by reason of the following facts: Clarke Mathis was working a farm during the year 1911 for petitioner, and, while cultivating and gathering the crop, became indebted to petitioner in a large sum of money, and, after giving him credit for his crop recovered by petitioner, he remained indebted in the sum of $195.56. On or about December 28, 1911, Jupe Hicks made a trade with Clarke Mathis to work a two-horse farm for him, and Mathis and Hicks came to petitioner and informed him of said trade and wanted petitioner to let the negro move to his place, and petitioner informed Hicks that he had not had a settlement with Mathis and did not know how much Mathis would owe him, that Mathis had property to the amount of at least $150, and that before he agreed for Mathis to move he wanted his money; whereupon Hicks informed petitioner in the presence of Mathis that if he would let him move his property, he would pay the account when petitioner and Mathis had a settlement. After said promise on the part of Hicks, petitioner and Mathis did have a settlement, and found the amount to be $195.56. Mathis is now living with said Hicks and cultivating a two-horse farm, the same as he did for petitioner during the year 1911. After the said promise petitioner settled the account of said Mathis and has ever since looked to said Hicks for the same. The said Hicks, since he got Mathis and his property in his possession, refuses to pay any amount. Attached to the petition was an itemized account of cash, merchandise, etc., charged to Clarke Mathis. By amendment the plaintiff alleged, that at the time he contracted with Hicks as set forth in the petition, Clarke Mathis was in possession of corn, potatoes, and other farm products, raised on plaintiff's farm, and moved them to the farm of Hicks in accordance with said contract; that Mathis was a cropper on plaintiff's farm, and plaintiff released his title to the property on the strength of said contract.

*E. L. Stephens,* for plaintiff in error.

*B. H. Moye,* contra.

RUSSELL, C. J.  Walker's evidence showed that Clarke Mathis was a cropper on his place. Walker was approached by Hicks, who stated that he had traded with Mathis to work a two-horse farm for him the following year, and wanted to know what amount Mathis owed Walker. Walker stated that he did not know the amount of

the indebtedness, because he had not had a final settlement with
Clarke. Thereupon Hicks stated that if Walker would allow Mathis
to move Hicks's place and carry with him the corn, etc., that he
had raised on Walker's place, he (Hicks) would pay Walker what-
ever, if anything, Mathis owed Walker when a settlement was had
between them. Mathis moved to Hicks's place and carried about
$150 worth of stuff from Walker's premises. Walker testified: "I
released my claim against Clarke [Mathis] and charged it to Mr.
Hicks when he agreed to pay same. He moved away and left some
seven or eight bales of cotton in the field, which I gathered, or had
gathered. After giving him credit for his part of the crop, he
owed me $195.56. I would not have let Clarke move the stuff had
Mr. Hicks not agreed to pay me." The evidence also showed that
Mathis was present when the agreement was made. Hicks's defense
was that he had not agreed to pay Mathis's account, but had re-
quested Walker to allow Mathis to remove his corn, etc.; Hicks testi-
fying: "I told [Walker] . . that if his [Mathis's] cotton did·
not pay him out, his stuff at my place would be just as subject to
his claim as at his own." He contended also that he was led to
believe by Walker that Mathis had a sufficient amount of cotton to
pay his indebtedness to Walker. It was also insisted by Hicks, both
by demurrer and in his motion for new trial, that the indebtedness
as against him was within the statute of frauds, and he could not
be held responsible unless he had assumed the indebtedness in writ-
ing; and that there was no such assumption of the debt as the law
required, to make it binding upon him. The court overruled the
demurrer, and upon the trial the jury found for Walker in the sum
of $109.25, Hicks made a motion for a new trial, on the grounds
that the verdict was contrary to law and to the evidence. He ex-
cepts to the overruling of his motion for a new trial, as well as to
the judgment upon the demurrer.

We see no error in either of the rulings excepted to. Under the
evidence for the plaintiff, which was based upon the allegations
of the petition, it certainly was the intent of the parties that the
debtor, Mathis, be released, and that Hicks be substituted for him.
This being true, the contract between Hicks and Walker was an
original undertaking and was not required to be in writing, under
the statute of frauds. *Sapp* v. *Faircloth,* 70 *Ga.* 690; *Palmetto
Mfg. Co.* v. *Parker,* 123 *Ga.* 798 (51 S. E. 714) ; *Ferst's Sons & Co.*

v. *Bank of Waycross,* 111 *Ga.* 229 (36 S. E. 773) ; *Harris* v. *Jones,* 140 *Ga.* 768 (79 S. E. 841) ; *Evans* v. *Griffin,* 1 *Ga. App.* 327 (57 S. E. 921) ; *Beard* v. *Hammock,* 3 *Ga. App.* 118 (59 S. E. 335). It can not be seriously insisted that the contract was nudum pactum. Walker released possession and title to property which he held, and allowed it removed to Hicks's place, to be used by Mathis in the making of a crop on Hicks's place. Such a detriment, suffered by Walker in releasing his property and in releasing Mathis from the payment of the account, was a sufficient consideration. Indeed the mere release of Mathis and the substitution of Hicks as the debtor at Hicks's request would have been a sufficient consideration. See *Ferst* v. *Bank, Evans* v. *Griffin, Beard* v. *Hammock,* supra; *Pylant* v. *Webb,* 2 *Ga. App.* 171 (58 S. E. 329) ; *Daniel* v. *Dickey,* 6 *Ga. App.* 548 (65 S. E. 301). There can be no doubt that the plaintiff's petition, under the decisions herein cited, set out a good cause of action, and that the verdict was sustained by evidence.

The question collaterally raised, as to whether an agreement to be substituted for a debtor must be for an amount fixed, is settled, we think (certainly so in the absence of authority to the contrary), by the decision in *Sext* v. *Geise,* 80 *Ga.* 698 (6 S. E. 174). In that case Sext, who was having a house built by a contractor whom the lumber dealers did not consider safe and whose supply of lumber was about to be stopped, procured a continuance of the building by promising to pay the bill against the contractor for the lumber, and he was held liable for the amount of the lumberman's bill, upon the theory upon which this suit is based. Sext did not promise to pay any certain amount; and we see no good reason why Hicks should be released from the payment of Mathis's account simply because no fixed amount was agreed upon. In fact, the amount of Mathis's indebtedness was not in dispute.

It is contended by Hicks that a new trial should be granted because the jury found against him for $109, instead of for $195, the whole amount sued for; his contention being that the verdict should either have been in his favor, or for the plaintiff for the full amount, since the amount of indebtedness was not in dispute. The evidence would have authorized a finding for the full amount. As to how or upon what reasoning the jury found their verdict, this court is without knowledge. It is sufficient for us that there was evidence authorizing the verdict returned; and a defendant will not be

heard, under such circumstances, to complain that a verdict was rendered for the plaintiff for a less amount than he might legally have been entitled to recover. *Baker* v. *Central Grocery Co., 15 Ga. App.* 377 (83 S. E. 504); *Myers* v. *Adams, 14 Ga. App.* 520 (81 S. E. 595), and citations.　　　　　　　　*Judgment affirmed.*