### 4944. WITT *v.* BAKER.

The court erred in striking so much of the defendant's answer as averred that no services had been rendered by the plaintiff in behalf of the defendant, and that for this reason the promise to pay the plaintiff "for services rendered previous to" the execution of the contract sued on was without consideration. The other parts of the answer were properly stricken, as they set forth no defense.

DECIDED SEPTEMBER 9, 1913.

Complaint; from city court of Americus—Judge Harper. April 26, 1913.

*W. W. Dykes,* for plaintiff in error.
*Ellis, Webb & Ellis,* contra.

RUSSELL, J. On May 13, 1911, L. M. Rambo executed a written agreement to sell to J. H. Baker a tract of land in Calhoun county, Georgia, known as the Davis estate place, consisting of 1,635 acres, more or less, at $10 per acre. It was provided therein that Baker should pay to Rambo $1,000 on June 15, 1911, and execute his promissory note for the balance of the purchase-price, to become due December 1, 1911, whereupon Rambo should execute to Baker

a bond for title to the land. On June 13, 1911, Baker signed upon this writing the following endorsement: "I hereby transfer my interest in the above bill of sale to J. C. Witt for valuable consideration." On the same day Witt and Baker entered into a written contract in which it was stated that Witt had bought from Baker land described, the description being the same as that contained in the writing from Rambo to Baker, and that it was agreed that Baker should transfer to Witt "the bill of sale" from Rambo, and that Witt would make the cash payment of $1,000 and execute his note to Rambo as described in the instrument from him to Baker. The contract further stipulated: "It is further agreed that the said J. C. Witt and J. H. Baker are to use their best efforts to make a sale of the above-described land and divide any profits they may make over and above the net cost of same, said sale to be made on or before the first day of December, 1911, and the minimum price shall be not less than eleven ($11.00) dollars per acre, and the said J. C. Witt agrees that if said land is not sold on or before the first day of December, 1911, then he, the said J. C. Witt, further agrees to pay the said J. H. Baker two and one half per cent. of the purchase-price of the said described land, for services rendered previous to this date."

Baker brought his action against Witt, making substantially the following allegations: Witt is indebted to plaintiff in the sum of $408.75, besides interest from December 1, 1911. Baker purchased from Rambo the land described in the foregoing document at the price of $10 per acre, and transferred to Witt the obligation of Rambo to convey title, Witt assuming the terms and conditions of the contract made with Rambo. On or about June 15, 1911, Witt paid to Rambo a part of the purchase-money and Rambo executed to Witt a bond for title to the land. On or about November 30, 1911, Witt paid the balance of the purchase-money for the land and Rambo executed a warranty deed to him. Thereupon Witt entered into possession of the land, and he is now in possession. The plaintiff used his best efforts to make a sale of it according to the terms of the contract, and was unable to do so on or before December 1, 1911; by reason of all of which Witt became indebted to him in a fixed sum. Witt answered, denying the indebtedness, admitting that he had purchased the land from Rambo as set forth in the petition, but alleging that he had paid only

$16,000 for the 1,635 acres. For want of sufficient information he declined either to admit or to deny the allegation that the plaintiff had used his best efforts to make a sale of the land on or before December 1, 1911. For further answer the defendant averred, that when he purchased the land from Baker he was to have clear title, and that after executing the contract with Baker he found on record in the office of the clerk of the superior court of Calhoun county a lease of the poplar, cypress, and ash timber located on certain portions of the land, which lease was still in force, and that the timber therein described was worth $1,300. The contract between Baker and the defendant did not except the timber, and Baker, in discussing the proposition of a sale with the defendant, pointed it out to him as an inducement for him to purchase the land. About the time the defendant paid for the property his attention was called to the lease of the timber on the land, and he called Baker's attention to it, and Baker stated to him that it had expired, by agreement or otherwise, and was not of force, and that the defendant would get all of the timber on the place that he had purchased. Defendant several times offered to pay Baker $400 (this sum being 2½ per cent. of the amount which he paid for the land) if Baker would clear up the timber lease, but he failed and refused to do this. The existence of the timber lease made the land less valuable by $1,300 than it would otherwise have been. Defendant prayed for a judgment against the plaintiff for $900. The plaintiff demurred to this answer, on the grounds that it failed to set forth a defense, sought to vary the terms of the written agreement between the parties, and failed to show how the defendant arrived at the value of the timber covered by the lease described in the answer. The demurrer having been presented in term time, an order was passed that the case be heard in vacation on April 11, 1913, at which time the court should have authority to pass upon all demurrers and amendments as if in term time, and enter up a judgment in the case, with the right of the losing party to except as if the rulings were made in term. It was further provided in the order that if the hearing was not had at the time stated, the court should have the right to continue the hearing to a future date.

At the hearing on April 11, 1913, the plaintiff amended his petition by adding a copy of the agreement to sell, executed by Rambo

to Baker, a copy of the bond for title executed by Rambo to Witt, and a copy of the deed from Rambo to Witt. In both the bond for title and the deed it was stipulated that the instrument was executed subject to certain turpentine and timber leases theretofore executed by the grantor. In each of these instruments the land was described as containing 1,635 acres, and the purchase-price was stated to be $16,000. Thereupon the defendant offered an amendment to his answer, averring that the agreement of the defendant to pay the plaintiff 2½ per cent. of the purchase-price of the land for services previously rendered was without consideration; that Baker did not render any services for the defendant prior to that date or in connection with this transaction, and for this reason was not entitled to recover the amount sued for. It was further averred, that Baker was unable to sell the defendant the land described in the contract between him and Baker, and that Rambo refused to make the sale to him except subject to a certain lease (a copy of which is attached to the answer) of the cypress, poplar, and ash timber on certain portions of the land for $1,300, to expire September 4, 1919. It was also alleged, that Baker was present when the defendant and Rambo finally consummated the trade, that the defendant bought the land from Rambo upon a contract entirely different from the one made with Baker, and that "in closing the trade with L. M. Rambo, the said J. H. Baker acquiesced therein and therefore agreed that the contract between J. H. Baker and this defendant, which is sued on, should become null and void and of no effect, and he therefore waived all of his rights in said contract when the sale was made direct by L. M. Rambo to this defendant on a different contract altogether." It was further alleged, that Baker was engaged in the real-estate business in Sumter county, Georgia, and did not have a license to do a real-estate business in Calhoun county, Georgia, that the amount sued for was compensation for work performed by him as a real-estate agent in connection with the transaction, and that the sale was made by Baker in the regular course of business as a real-estate agent. The trial judge took the case under advisement, and on April 26, 1913, entered a judgment sustaining the plaintiff's demurrer to the defendant's answer as amended, and entered up a judgment, as in case of default, in favor of the plaintiff, for the principal sum of $408.75 principal and $40.11 interest. The defendant excepted.

Neither Rambo's agreement of sale to Baker, which was transferred to Witt, nor the contract between Baker and Witt contained any exception in reference to the timber growing on the land. Growing timber, being a part of the realty, would of course pass under a conveyance of the land which did not except the timber. Upon the face of the papers, Baker obtained an option from Rambo and transferred his option to Witt, and at the same time executed to Witt an agreement to sell. In the writing there is nothing binding Witt to pay Baker any sum of money for the option which the latter had procured from Rambo. The only stipulation under which Witt became bound to pay Baker any money was that providing for the payment of 2½ per cent. of the purchase-price "for services rendered previous to this date." So far as appears, the services thus referred to may or may not have been connected with the sale from Rambo. For aught that appears, they may have been services rendered in an entirely separate and distinct transaction. The petition does not disclose what these services were; the language of the contract is ambiguous, and it is nowhere explained in the pleadings. The sum agreed upon to be paid could not have been intended as compensation to Baker for making a bona fide, but unsuccessful, effort to resell the land for Witt; for the services rendered were those performed prior to the execution of the contract. If the agreement to pay for services rendered referred to the procuring of the transfer of the option from Rambo, the defendant would be bound to pay, because it is admitted that Baker did procure from Rambo an agreement to sell the land, and did transfer this agreement to Witt. The fact that Rambo subsequently declined to make a conveyance which would include the timber and that Witt accepted the deed which excluded the timber would not affect Baker's right to recover compensation, if the parties really intended that he should be paid for his services in procuring the option. If, on the other hand, the expression "services rendered previous to this date," as used in the contract between Witt and Baker, referred to some other services, disconnected from the purchase from Rambo, then the defendant's pleas were sufficient to raise an issue. It is distinctly averred that no services were rendered by the plaintiff, and hence that the agreement was without consideration. The recital in the contract, that services had been previously rendered, would not estop Witt from

proving the contrary. This recital was but a statement of the consideration of the promise to pay, and could be inquired into for the purpose of showing that no services had been rendered and that the contract was for that reason without consideration. See *Coldwell Co.* v. *Cowart,* 138 *Ga.* 233 (75 S. E. 425). To recapitulate, the effect of our ruling is as follows: The expression in the contract, "services rendered previous to this date," is ambiguous. If it should appear that the parties intended that Baker should be compensated for his services in procuring the option from Rambo and transferring it to Witt, upon the pleadings as they now stand the plaintiff would be entitled to recover. If, however, it should appear that the expression "services rendered," as used in the contract, was intended to relate to some services disconnected from the purchase from Rambo, then the burden would be on the defendant to show that no services were in fact rendered, and that for this reason his promise to pay was without consideration. So much of the defendant's plea as alleged that no services were rendered by the plaintiff, and that for this reason the promise to pay was without consideration, should not have been stricken. The other portions of the answer were properly stricken, as they set forth no defense.                    *Judgment reversed.*